PIPE WELDING SUPPLY COMPANY, INC., Respondent, v
HASKELL, CONNER & FROST, Appellant.

Third Department, November 3, 1983

APPEARANCES OF COUNSEL

*Davidson & O'Mara, P.C.* (*John F. O'Mara* of counsel),
for appellant.

*James L. Burke* for respondent.

MIKOLL, J.

Plaintiff, a distributor of compressed and industrial gases, entered into a contract with defendant, an architectural firm, whereby defendant was to design and supervise the construction of a new building containing offices, a store, and warehouse and repair maintenance areas, next to plaintiff's existing cylinder plant in Elmira, New York. Plaintiff indicated that it expected the project cost to be in the $500,000 to $600,000 range but admitted that no absolute limit was set.

The agreement, a standard American Institute of Architects form contract, provided, among other things, that because neither the architect nor the owner had "control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions", the architect would not "warrant or represent that bids or negotiated prices will not vary from * * * any Statement of Probable Construction Cost or other cost estimate or evaluation prepared by the Architect." Defendant nevertheless orally assured plaintiff that bids were always within 10% to 15% of the estimate.

On September 11, 1979, five weeks after the last estimate from the architects of $609,790 was given, five contractors submitted bids, the lowest of which was $816,000 and the highest $890,000, a range of from 33% to 45% over the estimated cost. After efforts to reduce the cost, plaintiff rejected a lower renegotiated contract bid of $627,090 because some of the 41 changes incorporated therein were not satisfactory to plaintiff. Plaintiff then informed defendant that it did not wish to proceed with the plans.

At the time plaintiff terminated the project, 80% of the architect's work had been done. The contract called for an 8% architect's fee, plus reimbursement for certain expenditures. Plaintiff at this point had paid defendant $20,000 in fees and was billed an additional $20,656.25, allegedly due under the contract. Plaintiff eventually brought the instant action for malpractice alleging that the project was unskillfully and negligently prepared and demanded

$20,000 damages. Defendant counterclaimed for the unpaid $20,656.25.

Plaintiff presented at trial, in addition to the testimony of its president and another officer of the company, one expert witness, an architect with almost no knowledge of the project except the barest details stated to him in a hypothetical question from plaintiff's counsel. This expert stated his opinion that the degree of difference between defendant's estimate and the bids indicated that defendant had not used the skill, knowledge and judgment ordinarily possessed by proficient architects in the area. Further, he stated that a variation of 10% to 15% was "allowable or standard in our practice". However, he conceded on cross-examination that the details of defendant's estimation method revealed to him by counsel followed proper practices and that he could not say with certainty that every time a bid exceeded an estimate by more than 15% that malpractice had occurred.

Defendant's motion to dismiss for failure of plaintiff's expert to point to any specific way in which defendant had deviated from accepted architectural practice in its estimate was denied. Defendant then offered its proof, including expert opinions that defendant followed proper practices and that the degree of variance was not improbable because of the volatile nature of the market in the past years. Defendant also offered possible alternate reasons for the cost variance. Motions by defendant to dismiss and for a directed verdict were denied. The jury returned a verdict in favor of plaintiff. Defendant's motion to set aside the verdict as against the weight of the evidence was denied. This appeal followed a formal entry of judgment.

■ There must be a reversal. In proving architectural malpractice, the Court of Appeals has held that a plaintiff must present expert testimony in support of the allegations except where the alleged act of malpractice is within the competence of laymen to evaluate (*530 East 89 Corp. v Unger,* 43 NY2d 776). Plaintiff here did produce expert testimony that the disparity between the estimate and the bids received was so great that the architects had not used the skill, knowledge and judgment ordinarily possessed by proficient architects in the area. This opinion was rendered

simply on the basis of the discrepancy and without knowledge of the method of estimation or any specifics of the project other than that it was for a completed new building on a level site. Plaintiff pointed to no specific negligent act or omission as a cause of the injury sued for. Thus, it appears that if a recovery is to be permitted in this case the principles of *res ipsa loquitur* must be relied on (41 NY Jur, Negligence, §§ 7, 8, pp 13-15; 45 NY Jur, Physicians and Surgeons, §§ 158, 159, p 420).

However, the doctrine of *res ipsa loquitur* should not be applied where it can be shown specifically how the defendant was negligent without inordinate difficulty. Here, plaintiff offered lay proof in support of its theory that the malpractice complained of was caused by the architectural firm's negligently designing a building too expensive for plaintiff's requirements and budget. This theory, it would seem, could have been established through the expert testimony of another architect showing that defendant's evaluation was in error. Plaintiff made no attempt to do so. It is not proper to rely on an inference of negligence where, as here, specific acts of negligence, if existing, could be shown.

The rule of *res ipsa loquitur* also permits a jury to draw an inference of negligence, without direct proof, where the surrounding facts proved present a great enough probability of negligence. But the rule allowing such an inference cannot be applied if a plaintiff's damages can be accounted for on any reasonable grounds other than the defendant's negligence (41 NY Jur, Negligence, § 87, p 106). Explanations were offered at trial for the discrepancy between the estimate and the bids. Although these were either speculative or discredited on cross-examination, it was not shown that an alternate explanation did not exist. Therefore, it was error for the trial court to submit this case to the jury merely on the strength of an inference of negligence.

Defendant's contention that the court erred in charging the jury that they could "decide whether the bids submitted were so far out of line with what the defendants gave as their probable cost as to indicate to you that they did not exercise the reasonable skill required of an architect in submitting their figures or whether the divergence

is not so great as to indicate a departure from those standards that I have outlined to you" is well taken. As pointed out above, it was improper to allow this case to go to the jury based on an inference of malpractice drawn from the discrepancy between the bids received and the cost estimate. The charge was thus improper.

■ Defendant's contention that it was entitled to a directed verdict is persuasive. The parties agreed on the record that if plaintiff failed to establish malpractice, defendant was entitled to recover on its counterclaim for the unpaid portion of its fee and for certain expenses. Considering all of the evidence, it appears that plaintiff has failed as a matter of law to prove malpractice.

Accordingly, there should be a reversal, the complaint should be dismissed and defendant's motion for a directed verdict on its counterclaim should be granted in the amount of $20,656.25, plus interest.

MAHONEY, P. J., MAIN, WEISS and LEVINE, JJ., concur.

Judgment reversed, on the law, complaint dismissed, and defendant's motion for a directed verdict on its counterclaim is granted in the sum of $20,656.25, plus interest, with costs.