JULIUS EBANKS, Respondent-Appellant, v NEW YORK CITY
TRANSIT AUTHORITY, Appellant-Respondent.

First Department, July 17, 1986

## APPEARANCES OF COUNSEL

*Michael C. Modansky* of counsel *(Baron & Vesel, P. C.,* attorneys), for respondent-appellant.

*Steve S. Efron* of counsel *(William E. Rosa,* attorney), for appellant-respondent.

## OPINION OF THE COURT

WALLACH, J.

On March 21, 1980, plaintiff, at that time a 53-year-old securities clerk employed by Chemical Bank, set out from his home in East Elmhurst, Queens, en route to his employment in the downtown financial district, arriving at the Bowling Green subway station at about 7:00 A.M. Because it was raining he was wearing "over boots" or "totes". He boarded an escalator owned and controlled by defendant, whereupon his left foot became caught in a gap between the escalator step and the side, causing him to be thrown violently to the ground, fracturing his left hip, and inflicting related personal injuries.

■ ■ The trial court submitted the case to the jury on the theory of res ipsa loquitur; it returned a verdict apportioning the fault for plaintiff's accident at 25% against plaintiff and 75% against defendant, and fixed damages in the total sum of $100,000 (the sum of $93,000 for loss of earnings and the sum of $7,000 for pain and suffering). Accordingly, the court entered judgment in plaintiff's favor in the sum of $75,000 from which judgment defendant now appeals. Unfortunately, the testimony of plaintiff's medical expert, Dr. Simmons, as to the unhealed avulsion fracture on the lateral aspect of plaintiff's

left iliac bone was improperly received in evidence in the absence of the X rays on which the expert relied and, upon the inability of plaintiff to produce them, defendant's motion to strike this testimony should have been granted *(see, Hambsch v New York City Tr. Auth.,* 63 NY2d 723, 725; *Richter v Trailways of New England,* 28 AD2d 737, 738; *Sirico v Cotto,* 67 Misc 2d 636). Because of this error we reverse and remand for a new trial limited solely to the issue of damages. However, contrary to the contention of defendant and the position taken by our dissenting colleagues, we sustain the determination of the Trial Judge that this is a res ipsa case, and affirm the verdict of the jury upon the liability issues.

In *Corcoran v Banner Super Mkt.* (19 NY2d 425, 430), the Court of Appeals adopted the well-known formulation for the applicability of res ipsa: " '(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' "

■ Here, the jury was entitled to credit plaintiff's testimony that when he was ascending the escalator during the morning rush hour his left foot became caught in a two-inch gap between the side of the step and the sidewall of the escalator, and that unable to free himself during the course of the ascent, he was thrown to the ground and sustained a fracture to the iliac bone of his left hip. Certainly to permit the existence of such a dangerous gap on a public conveyance used by densely packed crowds of commuters is an event of "a kind which ordinarily does not occur in the absence of someone's negligence", and therefore to fault plaintiff for offering no evidence on this score is simply to misapprehend that the res ipsa rule is precisely designed to relieve plaintiff of that burden by invoking such rebuttable presumption based on circumstantial evidence *(Enslein v Hudson & Manhattan R. R. Co.,* 8 Misc 2d 87, 93-94, *mod* 6 AD2d 833, *affd* 6 NY2d 723). There was further proof by plaintiff's expert that the gap would have necessarily exceeded ⅜ inches, and defendant's sole witness conceded that this was probably accurate based upon his inspection immediately after the accident. It was virtually conceded that a gap in excess of ⅜ inches is violative of both the Building Code and industry standards.

There is no dispute that defendant operated and controlled the escalator. Defendant's witness merely speculated that the

gap might have been caused by vandalism. Such a speculation, without more, is wholly insufficient to defeat the applicability of res ipsa. Nor is the Court of Appeals decision in *Dermatossian v New York City Tr. Auth.* (67 NY2d 219 [Mar. 27, 1986]) to the contrary. There, the improperly angled grab handle on a bus was, of course, subject to seizure, abuse, and thus "control" at the hands of any and all passengers who felt obliged to use it. Such an active hand grip of passengers is, for the duration of that grip, total control; the passive feet of the escalator passengers here hardly took dominion and control of the escalator step in a comparable manner.

The "voluntary action" of the plaintiff in placing his foot in the gap also seems to give the dissenters pause. But on that third aspect the focus must be upon *what kind* of "voluntary action or contribution on the part of the plaintiff" will prevent his reliance upon the res ipsa doctrine. Comparison of the result reached in four elevator cases[1] *(Feblot v New York Times Co.,* 32 NY2d 486; *Weeden v Armor Elevator Co.,* 97 AD2d 197; *Burgess v Otis Elevator Co.,* 114 AD2d 784, *appeal discontinued & withdrawn* 67 NY2d 871; *Sirigiano v Otis Elevator Co.,* 118 AD2d 920) indicates that the kind of "voluntary action" by the plaintiff sufficient to negate the applicability of res ipsa must be his negligent interference with, intrusion upon, or invasion of control of the instrumentality causing the injury.[2] In *Burgess (supra),* this court held that where plaintiff was injured in a malfunctioning elevator which failed to level and caused her to fall sustaining injuries, a jury finding of 7½% contributory negligence does not preclude recovery upon the res ipsa theory. In *Weeden,* the Second Department, and in *Sirigiano,* the Third Department (with 45% negligence assessed against plaintiff), held it reversible error to fail to charge res ipsa in similar accidents. Analysis of the Court of Appeals *Feblot* decision sharpens the critical

---

1. The duty of maintaining an escalator is substantially the same as the duty of maintaining an elevator *(Birdsall v Montgomery Ward & Co.,* 109 AD2d 969, 971; *Gilbert v Korvette, Inc.,* 457 Pa 602, 327 A2d 94).

2. Before res ipsa becomes unavailable, the "control" exercised by plaintiff must be such as to permit appreciation of the peril and the opportunity to avoid it. Thus in *Chisholm v Mobil Oil Corp.* (45 AD2d 776), plaintiff was injured when she attempted to crank a towel from a wall dispenser in a gas station restroom and the entire contraption became detached and fell upon her causing injury. The court held a res ipsa charge proper, citing defective faucet handle cases: *Jungjohann v Hotel Buffalo* (5 AD2d 496), *Kane v Ten Eyck Co.* (267 App Div 789, *affd* 292 NY 701), and *Schanberg v State of New York* (58 Misc 2d 605).

distinction. Plaintiff Feblot was injured boarding an elevator in the New York Times building when, as she testified, she was struck by a malfunctioning door. It was error to charge res ipsa in *Feblot,* the court held, for the following reasons (at p 496): "In the case at bar Miss Feblot had as much, if indeed not more, control over the operation of the doors of the elevator than Times did because she was the one who activated the mechanism which controlled their operation. Furthermore, she was the one who determined when and how and under what circumstances she would enter the elevator. Even if the doors started to close while she was partially in and partially out of the elevator, as she claimed at the trial, she still had it within her power to cause them to instantly reopen automatically by merely touching the rubber safety edge on the inside of the door with her hand, as countless people entering and leaving elevators routinely do every day when the door of an automatic self-service door starts to close before they are completely inside or outside the elevator, as the case may be."

In the case before us, the jury found plaintiff 25% negligent in permitting his foot to become caught in a gap. This action by plaintiff cannot be said as a matter of law to be "voluntary" (as opposed to careless or inadvertent), but even if "voluntary", it was not an action which in any sense took temporary control of the mechanism (here a defective escalator) which brought about his injury.

■ Finally, and wholly apart from the evidentiary error tainting the present determination of damages, it might be added that a retrial of this aspect is desirable from a substantive point of view. Certainly, this damage award has some bizarre features. Plaintiff's bill of particulars, served one year after the occurrence, claimed lost earnings of $2,000 only for the year preceding its service. At trial, plaintiff testified that after one year of postaccident employment, he became unable to work at all, and, over defendant's objection on the ground of surprise, the trial court granted plaintiff's motion to amend his bill to conform to this proof. The interrogatory verdict returned by the jury awarded plaintiff $93,000 for lost earnings ($234 per week times his work expectancy of 7½ years) but only $7,000 for pain and suffering. A retrial of the damages may resolve what appears to be an anomaly on this record.

Accordingly, the judgment entered April 4, 1985 after trial (before Leo F. Hayes, J., and a jury), in Supreme Court, New

York County, should be modified, on the law, only to the extent of remanding the matter for a new trial confined solely to the quantum of damages, and, as so modified, it should otherwise be affirmed, without costs.

Asch, J. (dissenting in part). Plaintiff was injured when his foot became caught in a space between the step and side of an escalator at the Bowling Green station of the IRT subway. The case was submitted to the jury with a res ipsa loquitur charge that negligence of the defendant could be inferred from the mere presence of the space or gap.

The inference of negligence on the part of defendant was not the only one which could fairly and reasonably be drawn from the evidence, and the trial court, therefore, improperly charged res ipsa loquitur. (See, Feblot v New York Times Co., 32 NY2d 486.) The jury reasonably could have found, based upon testimony of both plaintiff and his expert, that the accident happened because plaintiff put his foot, covered with a soft, rubber overshoe, dangerously close to the side of the escalator, where it became caught.

In addition, although plaintiff asserts that the space or gap existed because of defendant's improper maintenance and failure to properly inspect the escalator, plaintiff offered no proof as to defendant's inspection and maintenance procedures. Testimony by an employee of defendant was to the effect that a gap could have been caused by vandalism rather than by improper maintenance. Defendant supported its view by furnishing verification evidence that the escalator was maintained and inspected on three occasions in the week before the accident.

It has been said that the doctrine of res ipsa loquitur "allowing such an inference cannot be applied if a plaintiff's damages can be accounted for on any reasonable grounds other than the defendant's negligence". (Pipe Welding Supply Co. v Haskell, Conner & Frost, 96 AD2d 29, 32, affd 61 NY2d 884.) Here, as noted, plaintiff's fall could have been caused by a number of factors over which defendant had no control. Thus, plaintiff himself testified he didn't know what caused his foot to become caught and offered no evidence that the two-inch gap was the type of defect that would not occur in the absence of defendant's negligence. (See, Dermatossian v New York City Tr. Auth., 67 NY2d 219.)

Just recently, in that case, the Court of Appeals reiterated the time-tested formulation for invoking the doctrine of res

ipsa loquitur: "In New York it is the general rule that submission of the case on the theory of res ipsa loquitur is warranted only when the plaintiff can establish the following elements: ' "(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff" ' (Corcoran v Banner Super Market, 19 NY2d 425, 430, mod on remittitur 21 NY2d 793 [quoting from Prosser, Torts § 39, at 218 (3d ed)])." (Dermatossian v New York City Tr. Auth., supra, p 226.)

This doctrine is "nothing more than a reasonable conclusion, from the circumstances of an unusual accident, that it was probably the defendant's fault." (Prosser and Keeton, Torts § 39, at 243 [5th ed 1984].) Where "other causes are in the first instance equally probable, there must be evidence which will permit the jury to eliminate them." (Id., at 249.) "It is never enough for the plaintiff to prove merely that the plaintiff has been injured by the negligence of someone unidentified. Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant." (Id., at 248.) Since the evidence in the case now under consideration has shown that acts of the plaintiff or a third party may reasonably be considered to have caused the alleged injury to the plaintiff, the prerequisite for a charge of res ipsa loquitur has not been met.

Dermatossian (supra) involved a res ipsa situation which is closely analogous to the one herein. Plaintiff, in that case, struck his head on a defective grab bar or handle as he stood to leave the defendant's bus. In Dermatossian, unlike this case, no proof of negligence was adduced and the court submitted it to the jury solely on a res ipsa theory of liability over defendant's objection.

Judge Hancock, Jr., writing for a unanimous court, in analyzing the res ipsa doctrine, stated that its "purpose is simply to eliminate within reason all explanations for the injury other than the defendant's negligence". (Dermatossian v New York City Tr. Auth., supra, at p 227.) Judge Hancock, Jr., further observed that "[t]he requirement does not mean that 'the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door' " (supra, at p 227, quoting from 2 Harper and James, Torts § 19.7, at 1086).

Thus, the Court of Appeals held that "plaintiff did not establish control of the grab handle by defendant of sufficient exclusivity to fairly rule out the chance that the defect in the handle was caused by some agency other than defendant's negligence" *(supra,* at p 228). It added: "The proof did not adequately exclude the chance that the handle had been damaged by one or more of defendant's passengers who were invited to use it. It is this crucial fact—that the grab handle was continuously available for use by defendant's passengers —which distinguishes the case at bar from *Bressler v New York R.T. Corp.* (277 NY 200), cited by plaintiff, where it could not be shown that the subway train window which caused the injury was used or under the control of someone other than the defendant" *(supra,* at p 228).

In *Dermatossian,* the Court of Appeals found plaintiff's case insufficient for the invocation of res ipsa since "[t]he proof did not adequately exclude the chance that the handle had been damaged by one or more of defendant's passengers who were invited to use it" *(supra,* at p 228).

Likewise, in the instant case, plaintiff offered no proof to exclude the possibility that the gap between the step and skirt was caused by one or more of the thousands of passengers who used the escalator that morning. As in *Dermatossian,* therefore, plaintiff's proof failed "to eliminate within reason all explanations for the injury other than the defendant's negligence" *(supra,* at p 227).

Plaintiff played a significant part in the way the escalator functioned on that occasion. It seems noteworthy that his own expert testified the accident occurred, in his opinion, due to "the soft material of the Totes" being caught in the gap between the step and the skirt. Plaintiff could not explain how his foot got caught in the gap, and an inspection of the escalator immediately following the accident found it in good working order. This control and voluntary action on the part of plaintiff, in placing his foot, wearing a soft overshoe dangerously close to the clearance, was more than enough to negate the inference that the defendant alone was responsible for the accident. Accordingly, the Trial Judge should have rejected a res ipsa loquitur charge. *(See, Feblot v New York Times Co., supra.)*

Consequently, the Trial Judge erred when, over the defendant's objection, he instructed the jury: "The plaintiff does not have to prove, members of the jury, what caused the gap or

opening to be there between the step and the side rail. He does, however, have to prove to your satisfaction that there was a gap into which his shoe or foot became lodged. If he does prove the fact of the gap existing in the manner that he said, you may infer that the defendant negligently maintained the escalator in question."

The conclusion herein is not predicated on the assumption that *any* contribution to the occurrence by the plaintiff precludes, as a matter of law, the applicability of the res ipsa doctrine. Nor does it rest on a resurrection of the doctrine that the contributory negligence of the plaintiff, no matter how slight, can defeat a recovery for the plaintiff. Moreover, the correctness or incorrectness of the Judge's charge of res ipsa is not dependent on the jury's finding that the plaintiff contributed 25% of the fault in the happening of the event which injured him.

Usually, the function of the Judge in a case heard by a jury is mainly to decide questions of law. However, frequently the court is required to resolve certain issues of fact in order to decide whether, or how an issue is to be submitted to the jury. In a negligence case, if reasonable persons can differ as to the conclusions to be drawn, res ipsa is not appropriate, although some facts might warrant submission to the jury on the traditional theory of negligence.

It is not necessary for this court to delve into the jurisprudential question of the relationship between a jury allocation of comparative negligence and res ipsa loquitur. This appeal is concerned rather with the Judge's instructions to the jury before the case is submitted to them for their deliberation. It is clear that the Trial Judge heard a substantial amount of testimony which presented serious questions as to whether the defendant, the plaintiff or a third party was responsible for the occurrence which resulted in the alleged injury to the plaintiff. This is verified by the jury's verdict, although we do not rely on it, but rather on the evidence which was before the Judge prior to the jury determination.

I agree with the majority that the Trial Judge made another significant error which may well have affected the jury's award of damages. The failure by the court to strike the testimony of plaintiff's medical witness, Dr. Simmons, as to a radiologist's report, when the X rays themselves were not admitted into evidence, was erroneous. Opinion evidence must be based upon facts in the record or personally known to the witness. *(Hambsch v New York City Tr. Auth.,* 63 NY2d 723.)

Oliver Wendell Holmes, in 1880, once predicted that ultimately the government would provide a mantle to protect Americans from all the vicissitudes of catastrophic events. This still seems to be in the distant and unpredictable future. Nevertheless, the law of torts, faced with the complexity of twentieth century technology and the ambiguity as to the assignment and perhaps meaning of fault, yet with the imperative need to spread the cost of devastating injuries so that they could be borne most reasonably and equitably, has invented workers' compensation, products liability and similar concepts. The hoary doctrine of res ipsa loquitur seems to be a rudimentary and perhaps vestigal accommodation to this sort of problem. For the most part, however, the traditional tort remedy of common-law negligence, with all its technical requirements, has persisted until a better solution is provided by the high court or the Legislature and we are bound to follow it.

KUPFERMAN, J. P., and KASSAL, J., concur with WALLACH, J.; ASCH and CARRO, JJ., dissent in part in an opinion by ASCH, J.

Judgment, Supreme Court, New York County, entered on April 4, 1985, modified, on the law, only to the extent of remanding the matter for a new trial confined solely to the quantum of damages, and as so modified, affirmed, without costs and without disbursements.