**John W. HAFFERMAN, Phyllis A. Hafferman, and the American Insurance Company, Plaintiffs,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, and Hilton Hotels Corporation, Defendants.**

Civ. A. No. 85–2634.

United States District Court, District of Columbia.

Dec. 23, 1986.

Patrick M. Regan, Thomas L. Gonzales, Washington, D.C., for plaintiffs.

Frederick B. Abramson, Kenneth Ingram, Judy B. Chase, Washington, D.C., for defendant Westinghouse.

Gary Ulmer, Donald M. Gilberg, Washington, D.C., for Hilton.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the court upon dispositive motions by defendants. Defendant Westinghouse has filed a renewed motion to dismiss the claim against it based on the recent Supreme Court decision in *Schiavone v. Fortune*, ── U.S. ──, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Defendant Hilton Hotels has filed a separate motion for summary judgment. After considering these motions, the underlying papers, counsels' statements at oral argument, and the entire record in this case, this court will deny Westinghouse's motion to dismiss and grant Hilton Hotels' motion for summary judgment, for the reasons set forth below.

## I. MOTION TO DISMISS

### A. Background

Plaintiff Hafferman, a paint foreman and independent contractor working on a job at the Capital Hilton Hotel in Washington, D.C., was injured on August 16, 1982 when he stepped from a service elevator that had not leveled properly with the floor. The District of Columbia has a three year statute of limitations for actions on negligence and the plaintiffs managed to file their action on the very last day of this limitations period—August 16, 1985. The complaint named Hilton Hotels and Westinghouse Elevator Company as defendants. Service was made that same day by mailing copies of the summons and complaint to both defendants and Westinghouse Electric

Corporation. Service was received by Westinghouse on August 20, 1985.

Subsequently, plaintiffs were informed by Westinghouse that the Elevator Company was not a separate, suable entity but merely an operating unit of Westinghouse Electric. Plaintiffs then sought to amend the complaint to substitute Westinghouse Electric for Westinghouse Elevator. This court granted their motion on November 21, 1985. On December 2, 1985, Westinghouse filed its original motion to dismiss the complaint against it based on the statute of limitations.

On January 27, 1986, this court denied Westinghouse Electric's motion to dismiss. At that time, however, it was recognized that the United States Supreme Court had recently granted certiorari in a case closely analogous to the instant suit and raising an issue virtually identical to that raised by Westinghouse in its motion to dismiss. Though this court concluded that the most equitable and internally consistent holding under the relation-back doctrine was to deny Westinghouse's motion, it was agreed during the hearing on that motion that denial would be without prejudice so that Westinghouse could move to set aside the order in the event the Supreme Court were to decide the issue differently.

On June 18, 1986, the Supreme Court decided *Schiavone v. Fortune*, ── U.S. ──, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), denying application of the relation-back doctrine to save a claim from the statute of limitations when the defendant does not receive notice of the action prior to the expiration of the limitations period. Westinghouse has thus renewed its motion to dismiss based on this decision. Before considering the applicability of *Schiavone* to this case, however, co-defendant Hilton Hotels' opposition must be considered.

### B. Relief From Prior Order

■ Hilton does not contest the applicability of *Schiavone*. Instead, it argues that a change in the law does not automatically justify setting aside a prior order. In particular, it relies on the fact that Federal Rules of Civil Procedure 60(b)(5) and

60(b)(6) do not authorize relief from judgment based solely on the ground that the law originally applied by the court has been subsequently overruled in another, unrelated proceeding.

Rule 60(b) has no bearing in this case, however, because it only deals with final orders. Denial of a motion to dismiss without prejudice is clearly not a final order. *See Watwood v. Barber*, 70 F.R.D. 1, 8 (N.D.Ga.1976). Therefore, rule 60(b) interposes no barrier to the complete power of this court to review its January 27, 1986 order. *Laffey v. Northwest Airlines, Inc.*, 642 F.2d 578, 584 (D.C.Cir.1980); Fed.R. Civ.P. 60(b) advisory committee's note ("[I]nterlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them").

### C. Applicability of Schiavone

In the January 27, 1986 order, this court concluded that an amendment seeking to change the name of a party-defendant will relate back to the filing of the original complaint if the newly named defendant received notice of the action within the limitations period plus the time permitted for service under rule 4(j). That decision was based in part on the wording of rule 15(c) which provides for relation back. The applicable provision of that rule states that the new party must receive notice of the action "within the period provided by law for commencing the action." It does not explicitly state that notice is required within the applicable statute of limitations period.

Furthermore, this court's original holding prevented the incongruity of allowing service of process under rule 4(j) against an accurately named defendant to be effected after the limitations period has run, but denying such service when the defendant has been misnamed. There seemed no reason for holding that a misnamed defendant is entitled to earlier notice than he would have received had the complaint named him correctly.

The decision in *Schiavone*, however, is directly contrary to that holding. In *Schia-vone*, a complaint alleging libel was filed approximately ten days before the expiration of the statute of limitations. Service was not attempted, however, until the day after expiration. Further, the complaint had misnamed the intended defendant. The libel had allegedly occurred in Fortune magazine and the complaint named Fortune as the defendant. Fortune is only a trademark, so when the complaint was received by the defendant's registered agent three days after it was mailed (i.e., four days after the expiration of the statute of limitations), the agent refused service. Approximately a month after that, plaintiff amended its complaint to properly name the defendant as the publisher of Fortune—that is, Time, Incorporated. Service was then effected.

Time, Inc. argued that the complaint against it was barred by the statute of limitations. The plaintiff contended that the amended complaint related back to the timely filing of the original complaint under rule 15(c). The Supreme Court rejected that argument. In a decision delivered by Justice Blackmun, the Court held that relation back is dependent on four factors: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period. 106 S.Ct. at 2384.

As in *Schiavone*, the first factor is not an issue in this case. It is the satisfaction of the remaining three that is of concern. In holding that Time, Inc. did not receive notice of the action against it prior to the expiration of the limitations period, the Court emphasized that rule 15(c) does not have engrafted upon it an extension of time for service of the complaint. *Id.* at 2385. The Court stated: "The linchpin is notice, and notice within the limitations period."

*Id.* The language chosen by the Court cannot be any clearer. Though the ruling obviously has an element of arbitrariness, the Court noted that such arbitrariness is imposed by the legislature and not by the judicial process. *Id.* This court's earlier conclusion has therefore been effectively overturned.

### 1) Notice to Westinghouse

■ Plaintiffs have attempted to argue around the *Schiavone* decision in a variety of ways. First, plaintiffs have argued that the statute of limitations is inapplicable because Westinghouse received notice of the accident shortly after it occurred. Their position is absurd, however, and obviously demonstrates a very fundamental misunderstanding of exactly what notice rule 15(c) requires. Plaintiffs' argument about Westinghouse receiving notice of the accident occurring is irrelevant for statute of limitations purposes. Rule 15(c) speaks to notice that litigation has been instituted. If notice that an accident has occurred were all that was required, statutes of limitation would be superfluous since any defendant would have received "notice" the moment they became involved in any transaction that could result in a lawsuit.

Nevertheless, plaintiffs recently strengthened this first argument about Westinghouse receiving notice within the limitations period. They filed a supplemental opposition on November 5, 1986—barely two days before the date originally scheduled for a hearing on these motions—that presented for the first time, a letter purportedly mailed to Westinghouse Elevator Company on February 2, 1983, well within the limitations period. This letter stated it was informing the Company that counsel's law firm would be "representing Mr. John W. Hafferman in a claim arising from injuries he sustained ... while working in the Capitol Hill [sic] Hotel."

■ Plaintiffs' new argument is also untenable, however. Even assuming that a letter to the Elevator Company could be notice to Westinghouse Electric (see "identity of interest" argument discussed *infra*)

and assuming that counsel actually did mail this letter to defendant on February 2, 1983 (an assumption hotly contested by Westinghouse in its November 26, 1986 reply to plaintiffs' supplemental opposition), plaintiffs have still failed to establish that Westinghouse received the notice required by rule 15(c). That rule states that the newly named party must have "received such notice of the *institution of the action* that he will not be prejudiced." Fed.R.Civ.P. 15(c)(1) (emphasis added).

Plaintiffs' February 2, 1983 letter provides no such notice. Its plain language says nothing about a lawsuit being filed nor about Westinghouse being a defendant. Further, the actual suit was not filed until two and one-half years after the date of this letter. As the Supreme Court said in *Schiavone*, "An action is commenced by the filing of a complaint." 106 S.Ct. at 2385. Therefore the 1983 letter, preceding as it did the filing of the complaint, could not possibly have given Westinghouse notice of the "institution of the action." In fact, the Third Circuit, whose decision was affirmed by the Supreme Court, stated in *Schiavone v. Fortune* that "rule 15(c) requires notice of the actual 'institution of the action,' and not mere notice that an action 'might ensue.'" 750 F.2d 15, 18 (3d Cir.1984), *aff'd*, — U.S. —, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

### 2) Identity of Interest

■ Second, plaintiffs have argued that *Schiavone* is distinguishable because there is such a close identity of interest between Westinghouse Elevator Company and Westinghouse Electric Corporation that notice to one constitutes notice to the other. Further, Westinghouse Electric received actual notice of the action at the same time its division, Westinghouse Elevator, did. That argument, however, has no real relevance. Neither Westinghouse Elevator nor Westinghouse Electric received the complaint until after the statute of limitations. That would not have mattered if the complaint had accurately named Westinghouse Electric, but since it did not, the timing of

the notice is critical. An identity of interest is thus irrelevant if neither entity got notice before the limitations period expired. A similar argument was also rejected in *Schiavone.* *See* 106 S.Ct. at 2385.

### 3) *Service Attempted Within Limitations Period*

■ Third, plaintiffs have argued that the instant case is distinguishable from *Schiavone* because here the plaintiffs attempted service within the limitations period. Plaintiffs mailed their complaint to defendants on the last day of the limitations period, instead of the day after as in *Schiavone.* The distinction is meaningless, however, since *Schiavone* speaks to when notice is received—not to when service is attempted. *Id.*

### D. *Schiavone* Distinguished

Finally, plaintiffs argue that unlike the situation in *Schiavone,* the reason defendant Westinghouse was misnamed was due to Westinghouse's misconduct. This distinction has merit because it is well recognized that if a party sought to be added to a complaint misleads a plaintiff as to its identity, the new defendant will be estopped from asserting a statute of limitations defense. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1500 (1971). In fact, in *Schiavone* the Supreme Court noted its inability to understand why the defendant had been misnamed. 106 S.Ct. at 2384. The Court stated: "An examination of the magazine's masthead clearly would have revealed the corporate entity responsible for the publication." *Id.* at 2384–85. The Court even went so far as to recite in a footnote the exact publisher information contained in the very magazine issues disputed in the case. *Id.* at 2385 n. 6.

By contrast, as this court noted in its January 27, 1986 order, it appears that Westinghouse is partly—if not entirely—to blame for the mistake in naming it in the original complaint. As noted in that earlier order, plaintiffs claim to have relied on a service contract defendant Westinghouse

had with co-defendant Hilton Hotels. That contract names Westinghouse Elevator Company as the party to the agreement. There was no indication that Westinghouse Electric Corporation was also involved or that the Elevator Company is merely a division of Westinghouse Electric rather than a separate subsidiary. An assumption that Westinghouse Elevator Company was a separate corporation would have been very reasonable since the use of the word "Company" in the District of Columbia normally indicates that the entity is a corporation and is therefore a suable entity. *See* D.C. Code Ann. § 29–308 (1981).

Westinghouse disputes this position, however. It contends that at the time the complaint was filed, plaintiffs' counsel did not have the agreement, listing only Westinghouse Elevator, entitled the "Executive Account Maintenance Agreement" (more commonly referred to as the national pricing agreement). Instead, it argues plaintiffs' counsel had the more relevant and controlling document, entitled the "Elevator Protective Maintenance Agreement" (referred to as the local agreement), which clearly indicates Westinghouse Electric as the party to the contract. Further, Westinghouse contends that even if plaintiffs counsel had only the national pricing agreement, it was counsel's fault for not obtaining the local agreement because the national pricing agreement states it is a supplement to the Protective Maintenance Contract—i.e., the agreement naming Westinghouse Electric.

■ Westinghouse's argument is well taken. Counsel for plaintiffs admitted during oral argument that in naming the defendants in the original complaint, he relied on a statement by his investigator about a contract between Hilton and Westinghouse Elevator. Counsel apparently did not see the actual contract prior to naming Westinghouse Elevator as defendant. Even if he had obtained the national pricing agreement, however, counsel should have noted it was merely a supplement to the local agreement. A diligent attorney would have sought out that local agreement, espe-

cially when leaving such a slender margin for error as filing on the last day of the limitations period. The press for time is no excuse here when counsel's law firm had this case at least since February 2, 1983 (according to the very letter plaintiffs produced in their November 5, 1986 supplemental opposition).

■ Of course, even if plaintiffs' counsel had reasonably relied on the actual national pricing agreement, such a situation alone would not suffice to estop Westinghouse from raising the statute of limitations defense. Plaintiffs' counsel was under an affirmative duty to ascertain the defendant's proper name. *See Slack v. Treadway Inn of Lake Harmony, Inc.,* 388 F.Supp. 15, 21 (D.Pa.1974) (defendant not estopped from raising limitations defense when plaintiffs could have discovered its identity as true owner of lodge by inspecting appropriate public records).

Counsel for plaintiffs, however, contends to have attempted to thoroughly research the issue before filing the complaint. First, counsel claims he inquired in person and by phone with the D.C. Government Office of the Recorder of Deeds. That effort was fruitless, however. Second, and more importantly, counsel also contends that he inquired by phone with Westinghouse offices in Shorthills, New Jersey, Upper Marlboro, Maryland, and Washington, D.C. The New Jersey office provided no information, the Maryland office refused to cooperate and disconnected the call during midconversation, and the Washington office stated that the Elevator Company was a subsidiary of the Electric Company.

Westinghouse contends that this claim of misleading the plaintiffs is a non-issue. It contends that since plaintiffs knew enough to send Westinghouse Electric a copy of the complaint as well as to send the Elevator Company a copy, then plaintiffs also had sufficient knowledge to correctly name Westinghouse Electric as a defendant. It is not so apparent, however, that such is the case. With no evidence to the contrary, this court must accept plaintiffs' counsel's

claims as true. Given that, naming the Elevator Company as a defendant was reasonable in light of the fact that plaintiffs' counsel was rebuffed and misled by Westinghouse when he called its offices.

■ The situation is therefore clearly distinct from that in *Schiavone.* There the confusion over accurately naming the defendant was entirely the plaintiffs' fault. In the case at bar, however, the confusion appears to be the result of Westinghouse failing to identify itself at any time prior to the expiration of the statute of limitations. Thus, it is obvious that "defendants bear much of the responsibility of plaintiffs' error. . . . [Those] parties should not be able to profit by the confusion that they themselves created." *Hart v. Bechtel Corp.,* 90 F.R.D. 104, 106 (D.Ariz.1981). *See also Morrison v. Lefevre,* 592 F.Supp. 1052, 1058 (S.D.N.Y.1984) (where plaintiffs' failure to name several defendants was caused by those defendants' attempts to suppress facts and thus prevent plaintiffs from knowing against whom their complaint should have been addressed, amendment of complaint under rule 15(c) justified); *Clark v. Southern Railway,* 87 F.R.D. 356 (N.D. Ill.1980) (misleading effect of labeling letterheads, payroll checks, and work rules with Southern Railway System helps justify relation back of plaintiffs' amendment to properly name defendant as Southern Railway Company).

Therefore, even after taking the decision in *Schiavone* into account, plaintiffs' amendment of the complaint is deemed to relate back since it appears Westinghouse misled plaintiffs. To prevent Westinghouse from profiting from the identity confusion it is in large part responsible for, its renewed motion to dismiss is denied.

## II. MOTION FOR SUMMARY JUDGMENT

Hilton Hotels has made a separate motion for summary judgment against the plaintiffs' complaint. Though it addresses a number of points, Hilton Hotels' motion is based primarily on a claim that since it delegated the duty of maintaining its eleva-

tors to Westinghouse by contract, and since Hilton Hotels fulfilled all its duties under that contract, it should not be held liable for this alleged accident. Though this argument has a surface appeal, after a review of the applicable law it is clear that Hilton is not entitled to summary judgment on that ground. Nevertheless, summary judgment on the complaint is warranted here.

It is well established that a prima facie case for negligence requires the following elements: (1) a duty, owed by defendant to plaintiff, to conform to a certain standard of care; (2) a breach of this duty by the defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach. *District of Columbia v. Fowler,* 497 A.2d 456, 462 n. 13 (D.C.1985). To survive a motion for summary judgment, a plaintiff need only produce sufficient evidence to create an issue of fact regarding each of these elements. *See Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983).

### A. Duty to Plaintiff

■ The first element, a duty, is clearly established as a matter of law under the facts of this case. Plaintiff Hafferman was present at the Hotel on the day of the accident as a painter hired by Hilton—i.e., as an independent contractor. As such, Hafferman was what is technically known as an "invitee" since he was on the premises at the request and for the benefit of Hilton Hotels. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 61, at 419 (1984). In the District of Columbia, a property owner owes the duty of reasonable care to discover and eliminate any danger that might threaten an invitee. *Miller & Long Co. v. Shaw,* 204 A.2d 697, 700 (D.C.1964). This duty cannot be delegated away. In fact, in *Thomas v. Potomac Electric Power Co.* the court held that:

> A person who invites the public to premises operated by him may not delegate to others or rely on others to perform the duty of maintaining the place in a reason-

ably safe condition, and relieve himself of the obligation in that manner.

266 F.Supp. 687, 693 (D.D.C.1967).

■ Though the specific issue of delegation in the context of maintaining an elevator does not appear to have been dealt with by any D.C. decision, reviews of the law in other jurisdictions clearly demonstrate that an owner's duty to properly maintain an elevator is nondelegable. *See* 26 Am.Jur.2d *Elevators and Escalators* §§ 11, 12 (1966); Restatement (Second) of Torts § 425 (1965). The Second Restatement of Torts even gives an example where the operator of a department store that employs an elevator company to repair its elevators is still subject to liability for the negligence of the elevator company. Restatement (Second) of Torts § 425, comment a, illustration 1.

Thus, despite Hilton's contract with Westinghouse, it owed a duty of reasonable care to Hafferman; a duty that included the need to properly inspect and repair the elevator. If the maintenance was performed negligently by Westinghouse, Hilton may have a claim for indemnity against Westinghouse under a theory of "active versus passive negligence," *see Kleinman v. Delfus Realty Corp.,* 25 Misc.2d 901, 201 N.Y.S.2d 837 (N.Y.Sup.Ct.1960), but it clearly cannot escape liability to Hafferman on that basis. *See Smith v. Jay Apartments, Inc.,* 33 A.D.2d 624, 304 N.Y.S.2d 737 (1969); 26 Am.Jur.2d § 12. *See generally* Annotation, *Liability of Owner or Operator for Injury Caused by Failure of Automatic Elevator to Level at Floor,* 64 A.L.R.3d 1020 (1975).

### B. Breach of Duty

The second element of a negligence action is a breach of duty. Normally, the finding of a negligent act (i.e., the breach of duty) is a determination left for the trier of fact. The mere happening of an accident, however, does not impose liability or reveal proof of negligence. *District of Columbia v. Davis,* 386 A.2d 1195, 1200 (D.C. 1978). A case may not be submitted to a jury unless there are sufficient, undisputed facts that would support an inference of

negligence. *Evans v. Byers*, 331 A.2d 138, 140 (D.C.1975).

Plaintiffs admittedly have no direct evidence that improper maintenance or other negligence caused the elevator to fail to level with the floor. Instead, plaintiffs are forced to rely on two arguments in an effort to avoid summary judgment. First, plaintiffs propose that Hilton failed to take reasonable care to discover and eliminate dangers to Hafferman because it was not more insistent that Westinghouse correct "a continuing leveling problem on this elevator." Second, plaintiffs propose that the fact this accident occurred is sufficient to raise an inference of negligence under the res ipsa loquitur doctrine.

### 1) Failure to Pressure Westinghouse

As support for the first contention, plaintiffs rely heavily on the testimony of their expert witness. This expert apparently reviewed work tickets for the elevator in question and reached the conclusion that the number of call backs was excessive. He felt that there was a continuing leveling problem. Hilton points out, however, that the evidence of a recurring problem boils down to a single work ticket dated approximately a month before the alleged accident. One repair cannot possibly be construed as evidence of a continuing leveling problem. Plaintiffs give no indication of how many other work tickets were issued and over what time period. Plaintiffs' expert, however, has admitted he relied on no industry standard in concluding there was an unusual number of repairs—i.e., his conclusion is just a guess.

This expert has also admitted that none of the work tickets bears a relationship to the accident. While this raises separate causal connection problems (see discussion *infra* of proximate cause), it further emasculates the allegation that Hilton had constructive notice of a problem with this elevator because even if there were a large number of repairs made, plaintiff has produced no evidence that the same malfunctions were occurring over and over again. There is nothing to suggest that frequent repair calls were an indication of shoddy work on Westinghouse's part. In the absence of proof to the contrary, it is just as likely that the allegedly numerous work tickets were due to a variety of different repairs that would necessarily arise in a busy hotel. In that case, the frequency of the service calls is simply an indication that Westinghouse was responding to every problem notification made by Hilton.

In fact, plaintiffs' expert has admitted that there is no evidence that Hilton failed to notify Westinghouse of every problem arising with the elevator. He has also admitted that there is no evidence Hilton ever failed to perform any of its duties under the contract with Westinghouse. The expert only claims that Hilton should have kept a log book of repairs, which purportedly would have notified Hilton of the service problem with its elevator. As just discussed, evidence of a problem with the elevator in question is almost non-existent, but even assuming there was such a problem, failure to keep a log book cannot be considered negligence. Plaintiffs' expert has admitted that under the contract with Westinghouse, Hilton had no duty to supervise the maintenance work. Furthermore, the expert can cite to no industry standard or practice for keeping a log book. He simply seems to consider it a good idea—again, mere conjecture.

In summary, plaintiffs ask the court to assume there are a large number of work tickets for the elevator in question, that their expert is correct in his personal opinion that the number is excessive, that the repairs were for repeated malfunctions indicating poor maintenance by Westinghouse, that the frequency of service was not due to the intensive upkeep that would be necessary in a busy hotel, that a reasonable hotel would have kept a log book of repairs despite a comprehensive service contract with a large and reputable elevator company, that such a log book would have notified the hotel that it had a hazardous elevator, and that in the exercise of reasonable care the hotel would not simply have reported the repair problem to the

elevator company but would have pressured it for increased service.

To support these assumptions, plaintiffs have produced all of one witness as evidence. This witness, an alleged expert, has simply given his personal opinion that there was a continuing leveling problem with the elevator, that Hilton should have kept a log book that would have notified it of this problem, and that Hilton should have pressured Westinghouse to remedy the alleged problem. There is, however, no hard evidence or objective standards that might support these conclusions. Opinion evidence such as this, which is conjectural or speculative, is not admissible. *Meek v. Shepard*, 484 A.2d 579 (D.C.1984); *Sponaugle v. Pre-Term, Inc.*, 411 A.2d 366 (D.C.1980).

By contrast, defendant Hilton Hotels Corporation has produced evidence that it maintained a comprehensive service contract with a large and reputable elevator company, that it performed all its obligations under that contract, that it was not aware of any leveling problem with the elevator, that it was concerned with the operation of its elevators, and that the elevator in question had misleveled only once before and that misleveling had been corrected a month prior to the alleged accident. Given the above, it cannot be said that there is a genuine issue of fact for trial. Plaintiffs simply have no colorable claim that Hilton breached a duty to Hafferman by its dealings with Westinghouse. Where the evidence is at best "merely colorable" and "is not significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, — U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### 2) Res Ipsa Loquitur

Plaintiffs remaining argument, to support the contention that there is an issue for trial regarding the breach of duty requirement, is that an inference of negligence arises from the accident under the res ipsa loquitur doctrine. Res ipsa loquitur functions like a rule of evidence. It allows a plaintiff to tell a finder of fact that an injury occurred to the plaintiff in the hope that the jury will conclude that the defendant's negligence must have been responsible for the injury. Note that the doctrine does not require a finding that there was negligence. Even if the res ipsa rule is applied, a jury is free to reject a conclusion that there was negligence. The res ipsa loquitur doctrine's inference of negligence is a rebuttable one.

Res ipsa is not always available to a plaintiff in a negligence action. The doctrine may only be applied in the District of Columbia where the plaintiff establishes that: (1) an event would not ordinarily occur in the absence of negligence; (2) the event was caused by an instrumentality in defendant's exclusive control; and (3) there was no voluntary action or contribution on plaintiff's part. *Marshall v. Townsend*, 464 A.2d 144, 145 (D.C.1983). The second element regarding exclusive control is not an issue in the instant case. The third element has been disputed by the parties since Hilton is claiming there was contributory negligence. While there is precedent for the claim that res ipsa is inapplicable in elevator misleveling cases because it is not the malfunction but the plaintiff's subsequent actions that cause the injury, *see Bernstein v. Highland Associates of Worcester, Inc.*, 1 Mass.App. 132, 294 N.E.2d 576, 578 (1973), it is not clear that such is the law in the District of Columbia.

Furthermore, this third element for application of res ipsa focuses on a particular type of voluntary action or contribution on the part of the plaintiff. To negate the application of res ipsa, the voluntary action by the plaintiff must be "the negligent interference with, intrusion upon, or invasion of control of the instrumentality controlling the injury." *Ebanks v. New York City Transit Authority*, 118 A.D.2d 363, 504 N.Y.S.2d 640, 642 (1986). In the case at bar, the record is void of evidence that Hafferman had any control over the misleveling of the elevator. Therefore denial of res ipsa on this ground would be inappropriate.

Plaintiffs, however, must still establish the first element for application of res ipsa—that the accident would not ordinarily occur absent negligence. It is this first element that is the mostly hotly debated and that is the most "slippery" concept to deal with. In *Marshall v. Townsend*, the court noted that "ordinarily" is the key concept of res ipsa loquitur. *Id.* A plaintiff must demonstrate that his injury ordinarily does not occur when due care is exercised. *Id.* As one court has put it:

the principle requires that the instrumentality causing the accident be unlikely to do harm unless the person in control is negligent; or stated another way, if causes other than the defendant's negligence might have produced the accident, plaintiff must exclude those other causes by a preponderance of the evidence, for otherwise it would be sheer speculation to conclude that the cause of the accident was one within defendant's control; or put a third way, plaintiff's proof must at least show that it was more probable than not that the accident was the result of a defendant's negligence.

*Ford v. District of Columbia*, 190 A.2d 905, 906–07 (D.C.1963).

■ In the instant case, plaintiffs have claimed there was a history of problems with the elevator in question. They have also produced evidence that on one occasion, a month before Hafferman's alleged accident, this elevator was repaired for failing to level properly. As just discussed, however, the evidence of a problem elevator is, at best, very flimsy, and a single prior repair for misleveling does not support a theory that an elevator's failure to level properly is ordinarily the result of negligence. Even more damaging to plaintiffs' theory, is the testimony of their expert witness. That witness has stated that leveling problems with elevators do occur from time to time in the absence of negligence—that they can occur even with good maintenance. Such an admission destroys any res ipsa inference that could be drawn.

■ It is clear that causes other than negligence may have produced the misleveling. In order to use res ipsa, plaintiffs must be able to establish that such a malfunction would not ordinarily occur in the absence of negligence. Plaintiffs must exclude other possible causes by a preponderance of the evidence. In the case at bar, however, plaintiffs can point to no instance where Hilton failed to inform Westinghouse of a problem, to no instance where Westinghouse did not respond, and to no instance where Westinghouse failed to properly effect repair. All this is in addition to the fact that plaintiffs have not the slightest shred of direct evidence of negligence.

The one service call made for misleveling does not help plaintiffs. Repair was effected at least a month before the alleged accident, and yet in all that time there were no further complaints of misleveling. A defect could have arisen so closely to the occurrence of the accident that defendants would have had no opportunity to discover it. It is thus sheer speculation to make any conclusion as to the cause of this elevator's failure to level properly. Plaintiffs' claim that negligence caused the malfunction is specious. Res ipsa is therefore inapplicable since there has been no showing that negligence was the predominant or the only reasonable explanation for the accident. *See Pratt v. Freese's, Inc.*, 438 A.2d 901, 904 (Me.1981) (doctrine of res ipsa inapplicable simply because elevator malfunctioned; must be proof accident would not have occurred had the defendants used due care).

### C. Proximate Cause

Even if plaintiffs had been able to raise a genuine issue for trial regarding whether there had been a breach of duty, plaintiffs would still have to establish the third and last element for a prima facie case of negligence—proximate cause. Proximate cause encompasses both the foreseeability of the injury and the requirement that the breach of duty have a direct and substantial causal link to the injury. *District of Columbia v. Freeman*, 477 A.2d 713, 715–16 (D.C.1984). Proximate cause is normally a question of fact for the jury but it can be one of law

when the available evidence will not support a rational finding of proximate cause. *Id.*

That is the situation in the case at bar. Even if there had been proof that negligence caused the elevator to mislevel, it is highly questionable that a jury should then be allowed to conclude that such a malfunction was the cause in fact of Hafferman's injury. The elevator's failure to level exactly with the floor only created a condition upon which Hafferman subsequently acted to cause his injury. The condition must have been plainly visible to Hafferman—it would have been straight out in front of him.

The issue is moot, however, because the lack of evidence and the inapplicability of the res ipsa doctrine, rule out a finding of negligent repair or upkeep causing the misalignment. That in turn rules out finding proximate cause from plaintiffs' other claim of negligence. That other claim is that Hilton had failed to pressure Westinghouse to provide better service in light of an allegedly excessive number of service calls.

As discussed earlier, plaintiffs have failed to create a genuine issue of fact regarding this second allegation of negligence, but even assuming they had raised a genuine issue, such negligence could not be the proximate cause of Hafferman's injury. Having ruled out negligence as the cause for the elevator's misalignment, the fact that Hilton did not pressure Westinghouse for more service is meaningless. Additional repairs could not have prevented a malfunction that was not caused by a failure to repair. Additionally, plaintiffs' second allegation of negligence requires too many leaps in logic. It requires one to assume that Hilton would have recognized a service problem with the elevator had it kept a log book, that Hilton would have been able to obtain more service from Westinghouse by pressuring it, that increased service would have reduced the allegedly excessive number of repair calls, and that reduced repairs would have prevented the misalignment even though all but one of the prior repair calls had no relation to the malfunction at issue here.

It is clear, therefore, that available evidence will not support a finding of proximate cause using either of plaintiffs' claimed breaches of duty. Since plaintiffs have failed to sufficiently establish two of the three requirements for a prima facie case of negligence, summary judgment is appropriate.

## III. CONCLUSION

Defendant Westinghouse Electric Corporation's renewed motion to dismiss is denied. Defendant Hilton Hotels Corporation's motion for summary judgment is granted. In accordance with this court's order filed August 12, 1986, Westinghouse may file a motion for summary judgment within fifteen days after the date this opinion is filed. An appropriate order accompanies this Memorandum Opinion.