**Niles EPPERSON, Appellant,**

v.

**Sandra Faye BERRY, Appellee.**

No. 15688.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

April 1, 1971.

Frank B. Gray, Houston, for appellant.

Celia L. Nathan, Lawrence T. Newman,
Houston, for appellee.

PEDEN, Justice.

The father of Rebecca Epperson, a girl
six years old, appeals from a judgment

entered on a jury verdict changing the custody provision of an earlier divorce decree and awarding custody of the child to her mother. The divorce decree had been entered on January 16, 1968. It recited that the divorce was tried before a jury on December 12, 1967. In the decree Niles Epperson was granted a divorce from Sandra Epperson and these jury findings were stated:

"3. That the Plaintiff and Cross-Defendant, SANDRA F. EPPERSON, is not a fit and proper person, and that it would not be in the best interest of the minor child, REBECCA MARIE EPPERSON, for her care, custody and control to be awarded to the Plaintiff and Cross-Defendant, SANDRA F. EPPERSON;

"4. That the Defendant and Cross-Plaintiff, NILES H. EPPERSON, is a fit and proper person, and that it would be in the best interest of the minor child, REBECCA MARIE EPPERSON, that her care, custody and control be awarded to the Defendant and Cross-Plaintiff, NILES H. EPPERSON;"

The decree also provided:

"It further appearing to the Court that there was one child born to the Plaintiff and Defendant during their said marriage, to wit: REBECCA MARIE EPPERSON, born the 16th day of February, 1964, and the Court having heard the evidence and considering the findings of the Jury, is of the opinion that the interest of the above named child would be best served by placing the care, custody and control of said minor child, REBECCA MARIE EPPERSON in the Defendant and Cross-Plaintiff, NILES H. EPPERSON, in the home of said child's paternal grandparents, MR. AND MRS. FLOYD HOPKINS EPPERSON;

"It is therefore ORDERED, ADJUDGED, and DECREED by the Court that the permanent care, custody and control of the said REBECCA MARIA EPPERSON be granted to the Defendant and Cross-Plaintiff, NILES H. EPPERSON;

"It is further ORDERED by the Court that the said REBECCA MARIE EPPERSON be kept in the home of her paternal grandparents, MR. AND MRS. FLOYD HOPKINS EPPERSON, until further orders of this Court;

"It is further ORDERED, ADJUDGED, and DECREED that the Plaintiff and Cross-Defendant, SANDRA F. EPPERSON be allowed to visit with the said REBECCA MARIE EPPERSON from 9 a. m. each Friday until 6 p. m. Saturday, the next day, away from the home of the paternal grandparents, and at all other times agreeable to both parties."

In a new and independent cause of action, Mrs. Berry filed her petition for change of custody on April 9, 1969, alleging that there has been a material change in the conditions surrounding the child, that Niles Epperson has remarried and no longer lives in the home with Rebecca and that Sandra Epperson Berry has remarried and now lives in a home suitable to the child.

Niles Epperson, the appellant here, filed a general denial. His parents, F. H. Epperson and wife Laverne Epperson intervened and sought custody of Rebecca, alleging that neither the natural father nor the natural mother of the child is the proper person to have her custody but that her best interests would be served by awarding custody to them.

The following special issues were submitted to the jury and the following answers were given:

SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that since the divorce on December 12, 1967, between Niles Epperson and Sandra Epperson, there has been

a material change of conditions involving minor child Rebecca Epperson that affects the welfare and best interest of said minor child?

"Answer 'We do' or 'We do not'."

Answer was "We do"

### SPECIAL ISSUE NO. 2

"If you have answered Special Issue Number 1 'We.do,' and only in that event answer Special Issue Number 2.
"In whose custody do you believe the welfare of the child, Rebecca Epperson, would be best served; Niles Epperson, Mr. & Mrs. Floyd Epperson or Sandra Berry?

"ANSWER         Sandra Berry"

The appellant's points of error amount to complaints that the trial court erred 1) in refusing to admit into evidence the entire divorce decree of the parties, 2) in failing to grant the appellant's motion for instructed verdict because the plaintiff-appellee had not shown that conditions had so materially changed as to demonstrate that the appellant had become unfit and that the child's welfare had become endangered since her custody had been decided in the divorce decree and 3) in refusing the appellant's proffered special issues.

■ We affirm the judgment of the trial court. The trial court admitted in evidence part of the decree in the divorce case, so the appellant's first point is based on the trial court's exclusion of that part of the decree which set out jury findings that when the divorce was heard 1) Sandra Epperson (now Berry) was not a fit and proper person to have custody of Rebecca and it would.not be in the best interest of the child to have her mother given custody and 2) Niles Epperson was a fit person and it would be in the best interest of Rebecca to have her custody awarded to him. The trial court admitted in evidence the part of the divorce decree containing the court's orders as to custody and visitation.

We find no abuse of discretion in the exclusion. The excluded findings were res judicata of the parties' fitness when the divorce was heard, but they were before the court and it was not necessary to inform the jury of them under the facts in this case. The jury was concerned about the conduct of the parties after the divorce. Further, we think the jury had no doubt about the substance of the prior holding after being informed that custody of a three-year-old girl had been awarded to her father, not to her mother. The error, if any, was harmless.

■ As to the appellant's second point, Texas law requires that there be a showing of materially changed conditions to authorize a change of custody. The controlling considerations are those changes of conditions affecting the welfare of the child. Bukovich v. Bukovich, 399 S.W.2d 528 (Tex.Sup.1966).

"In determining whether there is any evidence of probative value to support the verdict or findings of a jury, or in determining whether the evidence is sufficient as a matter of law, the court of civil appeals considers only the evidence that tends to support the verdict or findings and disregards the evidence contrary thereto." 4 Tex.Jur.2d 388, Appeal and Error—Civil § 836; In re King's Estate, 244 S.W.2d 660 (Tex.Sup.1951).

It is on this basis that we briefly review the evidence adduced at the hearing in the instant case.

Appellee, Mrs. Sandra Berry, testified that she and her present husband have bought a home, where they now live, at Hull, Texas. It has two bedrooms, is on three-fourths of an acre of land and they have good neighbors who have children. She expects the birth of another child in July. Since the divorce she has had Rebecca with her every Friday and Saturday and on many other occasions.

That when she filed this suit, her former husband, Niles Epperson, was not living

with his parents and often had the child away from his parents' home although the divorce decree of January 16, 1968 specifically ordered that Rebecca be kept there. Niles Epperson and his second wife have recently moved back into his parents' home.

That her child has often asked that she keep her. Her second husband is able to support her child and wants to do so.

Mrs. Berry's sister testified that she sees the child often and that Rebecca doesn't appear to be happy; she cries when it is time for her to leave her mother. The sister feels it would be to the child's best interest to live with her mother, who is now a stable person, capable of caring for her child.

The appellant's present wife testified that she and the appellant are remodeling what used to be a tool shed at his parents' home to make a residence for themselves. They are adding at least two rooms.

A Mrs. LeCompte and a Mrs. Miller both testified that they have seen Rebecca cry and beg her mother not to take her back to the Eppersons' home.

The parties stipulated that when the child sleeps at her paternal grandparents' home she wears a diaper because she still wets the bed.

The appellant testified that until he moved back to his parents' home, after this suit was filed, Rebecca was spending two or three nights per week at his house. He is not contributing to his parents for the lodging they now furnish him and his wife and daughter. The child's mother frequently asks to have the child visit her during the week, and he sometimes permits it. Rebecca spent two to four nights a week in his home because she wanted to and his parents let her go.

When he and his present wife moved away from his parents' home about a year ago, they didn't take Rebecca with them. They moved because they wanted to live in their own home so they could get them-

selves straightened out so that they can live a good, clean decent life. His present wife had just lost custody of her son by a previous marriage " * * * and she was pretty well shook up over it, and we had to have time enough to help her get straightened out and get situated ourselves to one another. In order to do that, well, we had to be by ourselves; and so far we have been able to do what we set out to do. We are ready to settle down and live a good, clean, decent life and a Christian life later on, I hope, if nothing don't interfere with our lives."

The appellant admitted that after the divorce he stepped off on the wrong foot but stated he "had enough sense to get back on the right foot." He said that his daughter usually has a cold or an earache when the appellee brings her back after a visit, but admitted he had never taken her to doctor because "you can buy medicine at the drug store for that without paying a big doctor bill." The appellant testified that he did not know why his parents had intervened in this suit seeking custody of Rebecca for themselves and alleging that neither he nor the child's mother is the proper person to have custody of Rebecca. He did not know of any reason his parents would say that the child's mother is not a proper person to have custody.

The plaintiff-appellee then rested and the appellant moved for an instructed verdict. It was overruled, and the appellant then called several witnesses to the stand, so we also consider the evidence adduced after that point to determine whether the issue in question was raised.

There was evidence that the appellant averages about $60. in earnings per week, and that the appellee's husband earned $7,-300. or more during the last year. The appellee testified that she is now 20 years old; she was about 15 when Rebecca was born and was 18 when the parties to this suit were divorced. When the divorce was granted appellant was sharing a small house with another young woman and her two small children.

Appellee testified that the child is a nervous wreck, that she dreams of killing her grandparents and that she wears diapers and rubber pants to bed at the Eppersons' home because she wets the bed there, but has done it only twice at the appellee's home. That Mrs. Epperson told her that the appellant's present wife threatened to whip Rebecca for not calling her "Momma". Appellee is not complaining about the paternal grandparents, but feels that the two Epperson families trying to raise Rebecca cause confusion.

That there is now a beer joint across the street and down a couple of houses from where the Eppersons live, and some dope was found there in a raid a few months ago.

The house she and her husband are buying at Hull is a good place to raise children; there is nearly an acre of yard, and they have bought Rebecca a bicycle and a pony.

Mr. F. H. Epperson, the paternal grandfather of Rebecca, testified he gets along well with the appellee and has no hard feelings against her. He stated that he filed an intervention in this case because he was displeased with some of the things his son, Niles Epperson, (the appellant) was doing and with his "running around". When Rebecca is at his home the one she plays with during the day is her grandmother. He and his wife have been disturbed by Rebecca's bed wetting problem. Her going back and forth between the two places probably could upset her enough to keep her nervous.

Mrs. Laverne Epperson, the paternal grandmother of Rebecca, testified that she did not think her son's present wife would be a proper person to help him raise Rebecca, because she wouldn't know how to take care of a child. When asked if the appellee is an unfit mother, the witness answered: "She was." This reply was directed to the time when divorce was granted. When asked if she felt that Rebecca's best interests would be served if she were

with her mother, the witness replied that she didn't know about that. She explained that Rebecca's mother had not proved to her that she is a fit person to care for the child but did admit "she probably would be fit." Her son sometimes whips Rebecca with his belt.

We consider that this evidence shows a sufficient change in material conditions seriously affecting the best interests of Rebecca to warrant a change of custody. The hearing began on March 10, 1970 and lasted nearly four days. The jury in this case, being entitled to believe the testimony we have noted here and to disregard that which was contrary to it, may well have concluded that Mrs. Berry was an immature, unstable girl of 18 when the divorce was granted and that she then had no suitable place to care for her little daughter. The evidence also supports the conclusion that the appellee is now a happily married, stable person who is buying a suitable home in a nearby town, that she is now strongly interested in the welfare of her little girl and this demonstrated interest has a soothing effect on Rebecca's emotional problem. Further, that Rebecca is responding so adversely to the atmosphere and relationship now existing between the F. H. Eppersons, their son and his present wife that she has become a nervous, upset child, to the detriment of her welfare. That each of the four Eppersons sometimes asserts control over her, although it is usually done by Niles or his mother.

There was evidence from which the jury may have concluded that Niles Epperson's suitability to have custody of the little girl has lessened and, while believing his admissions, the jury may not have accepted his account of his professed reform. The jury also heard testimony indicating that Rebecca's opportunities to associate with other children are limited when she is staying with the Eppersons but not when with her mother.

Finally, there was evidence indicating that neither Niles Epperson nor his mother,

the persons most actively opposing Mrs. Berry, now considers her unfit to have custody of her daughter.

 We recognize that stability in the home and surroundings of a child are of great importance, that the disturbing influence of re-litigation should be discouraged and that a final judgment in a divorce or custody proceeding is res judicata of the best interests of a minor child as to conditions then existing. Knowles v. Grimes, 437 S.W.2d 816 (Tex.Sup.1969).

Although there was evidence which tends to contradict most of that which we have related, we are convinced that the evidence supported the trial court's refusal to grant an instructed verdict in favor of the defendant. A fact issue having been raised as to material change of conditions in both the custodial and non-custodial homes affecting the best interest of the child, the question becomes whether or not a change of custody is warranted, and this is a question within the discretion of the trial court, whose action will not be disturbed in the absence of an abuse of discretion. Bukovich v. Bukovich, supra.

It was stated in the recent case of Dohrmann v. Chandler, 435 S.W.2d 232 (Tex. Civ.App.1968, no writ):

"There is no definite guideline as to what evidence constitutes a material change of circumstances or conditions that affect the welfare of a small child. However, we believe that the same must be decided in each case according to the circumstances as they arise. We know that the jury had an opportunity to observe and evaluate the personalities of the contending claimants, to weigh the credibility of their testimony, and to assess the physical, mental, moral and emotional needs of the child. The jury's verdict binding by statute the trial court's judgment also binds our hands when supported by evidence. The trial court who also observed all of the evidence, refused to grant a new trial, and as such did not abuse its discretion."

The appellant's last point has not been properly preserved in that the record does not show that the appellant proffered the special issues in question to the trial judge and that he indorsed thereon "Refused" and signed the same officially as provided by Rule 276, Texas Rules of Civil Procedure, nor does the record contain a bill of exceptions by which the matter might be reviewed by this court. American Pozzolan Corp. v. Desert Trucking Co., 450 S.W.2d 433 (Tex.Civ.App.1970, writ ref. n. r. e.). In any event, we have examined the issues in question and have concluded that they were not controlling ones. Failure to submit them to the jury was not error. Rule 279, R.C.P. The matters raised by the proffered issues were adequately submitted to the jury.

Affirmed.