**DALLAS MARKET CENTER DEVELOPMENT COMPANY, Petitioner,**

v.

**Laurie LIEDEKER, Respondent.**

No. 96–1240.

Supreme Court of Texas.

Dec. 4, 1997.

---

Gregory R. Ave, Tom J. Stollenwerck, Dallas, for Petitioner.

Edwin E. Wright, III, Dallas, Ronald D. Wren, Bedford, for Respondent.

PER CURIAM.

The dispositive question in this case is whether the trial court erred in charging the jury that an elevator owner owes a passenger a high duty of care rather than an ordinary duty of care. We answer yes. Because the case must be remanded for retrial, we also consider whether the district court erred in refusing to charge the jury on premises liability.

A timing device on a freight elevator in Dallas Market Center Development Company's Loew's Anatole Hotel automatically lowered the entry gate twenty-one seconds after it opened. A bell warning that the gate was lowering had been muffled because the noise annoyed hotel guests. Laurie Liedeker, a florist, was loading plants onto the elevator when the gate began to lower and struck her head, injuring her neck. Liedeker sued DMC and Otis Elevator Co., who maintained the elevator, but nonsuited Otis the day of trial.

The district court charged the jury as if Liedeker's claim were for injury from DMC's negligent activity rather than from a defect in DMC's premises. The charge inquired simply whether any negligence of Liedeker or DMC caused Liedeker's injury, what percentage was attributable to each, and what damages Liedeker incurred. Negligence for Liedeker was defined as the failure to use ordinary care, but negligence for DMC was defined as the failure to use "a high degree of care", that is, the "care that would have been used by a very cautious, competent, and prudent person". DMC objected that the charge "impose[d] a greater burden on it than required by law", and specifically, that "[i]n regard to the definitions of 'negligence' and 'high degree of care,' [DMC] would urge the Court to define 'negligence' and 'ordinary care' in Question Number 2 [regarding DMC's negligence] as it is set forth in Question Number 1 [regarding Liedeker's contributory negligence]". The district court overruled DMC's objections, explaining that "[t]he definitions and the placing of the definition of 'high degree of care' with respect to [DMC] was out of a case styled [*DeLeon v. Otis Elevator Co.*, 610 S.W.2d 179 (Tex.Civ. App.—San Antonio 1980, writ ref'd n.r.e.) ]." The jury returned a verdict for Liedeker, and the court rendered judgment on the verdict. The court of appeals affirmed. 958 S.W.2d 382.

DMC argues that it owed Liedeker only a duty of ordinary care. We agree. In *Triangle Motors v. Richmond*, 152 Tex. 354, 258 S.W.2d 60, 62 (1953), we stated that an owner of an elevator on business premises owed an invitee "a duty to use reasonable

care to make and keep the premises reasonably safe for his use". In other words, an elevator owner's liability is for a defect in the premises that presents an unreasonable risk of harm, and his duty is to use ordinary care to prevent such harm. *See University of Texas Med. Branch v. Davidson,* 882 S.W.2d 83, 86 (Tex.App.—Houston [14th Dist.] 1994, no writ); *see also Fox v. Dallas Hotel Co.,* 111 Tex. 461, 240 S.W. 517, 520–21 (1922) (an elevator repairer's duty is to exercise ordinary care).

The court of appeals did not cite *Triangle Motors,* relying instead on *Farmers' & Mechanics' Nat'l Bank v. Hanks,* 104 Tex. 320, 137 S.W. 1120, 1124 (1911), which states in dicta that an elevator owner "should be held liable to a very high degree of care in respect to the safety of persons" using the elevator. This view was understandable at the time. The passenger elevator was first made possible only fifty-eight years earlier by Elisha Graves Otis' invention of a safety clamp that would prevent an elevator car from falling if the hoist rope broke. 8 NEW ENCYCLOPEDIA BRITANNICA 1042 (1995). The first such elevator was installed in the five-story Haughwout Department Store in New York City in 1857. *Id.* The first electric passenger elevator was installed in the Demarest Building in New York City in 1889. Wendy Ross, *The Rise—But Rarely the Fall—of the Elevator,* THE WASHINGTON POST, Mar. 21, 1995, at H1.

Two early decisions in the courts of appeals followed the *Hanks* dicta. *City Nat'l Bank v. Pigott,* 270 S.W. 234 (Tex.Civ.App.—San Antonio 1925, no writ); *Dulaney Inv. Co. v. Wood,* 142 S.W.2d 379 (Tex.Civ.App.—Fort Worth 1940, writ dism'd judgm't cor.). No other case has. Two other cases—*Brewer v. Otis Elevator Co.,* 422 S.W.2d 766, 769 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.), and *Mattox v. C.R. Anthony Co.,* 326 S.W.2d 740, 743 (Tex.Civ.App.—Beaumont 1959, writ ref'd n.r.e.)—expressed some approval of a rule imposing a high duty of care on elevator owners, but both overlooked *Triangle Motors.* In *DeLeon v. Otis Elevator Co.,* 610 S.W.2d 179 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.), on which the district court in the present case relied, and in *Otis Elevator Co. v. Bond,* 373 S.W.2d 518 (Tex.Civ.App.—Dallas 1963), *rev'd,* 388 S.W.2d 681 (Tex.1965), the trial court instructed the jury that the elevator owner was responsible for exercising a high degree of care, but the appeals court in neither case passed on the propriety of the instruction. We disapprove of these cases to the extent they conflict with *Triangle Motors.*

Other states are divided over the duty of elevator owners. In several jurisdictions, elevator owners are liable only for ordinary negligence. *E.g., Hafferman v. Westinghouse Elec. Corp.,* 653 F.Supp. 423, 430 (D.D.C.1986); *Summers v. Montgomery Elevator Co.,* 243 Kan. 393, 757 P.2d 1255, 1261–62 (1988); *Charter v. Supreme Council of the Royal Arcanum,* 356 Mass. 715, 247 N.E.2d 597, 597–98 (1969); *Krueger v. North American Creameries,* 75 N.D. 264, 27 N.W.2d 240, 242 (1947); *King v. J.C. Penney Co.,* 238 S.C. 336, 120 S.E.2d 229, 230–31 (1961). In other states, elevator owners are held to a higher standard of care because they are considered common carriers, an idea we rejected in *Hanks. Johnson v. Hopkins,* 213 Ala. 492, 105 So. 663 (1925); *Little Rock Land Co. v. Raper,* 245 Ark. 641, 433 S.W.2d 836, 841–42 (1968); *Jardine v. Rubloff,* 73 Ill.2d 31, 21 Ill.Dec. 868, 872, 382 N.E.2d 232, 236 (1978); *Cash v. Otis Elevator Co.,* 210 Mont. 319, 684 P.2d 1041, 1043 (1984); *Petrie v. Kaufmann & Baer Co.,* 291 Pa. 211, 139 A. 878, 879 (1927); *Lamb v. B & B Amusements Corp.,* 869 P.2d 926, 930 (Utah 1993); *Murphy's Hotel, Inc. v. Cuddy's Adm'r,* 124 Va. 207, 97 S.E. 794, 797–98 (1919). We are aware of only one state in which elevator owners are held to a higher standard of care even though they are not considered common carriers. *Grant v. Allen,* 141 Ga. 106, 80 S.E. 279, 280 (1913). *See generally* 26 AM. JUR. 2D *Elevators and Escalators* §§ 4, 14 (1996).

 We continue to hold, as we did in *Triangle Motors,* that an elevator owner owes a duty of ordinary care to protect invitees from an unreasonable risk of harm because of the elevator. It follows that the district court erred in submitting the charge in this case. DMC objected that the charge "impose[d] a greater burden on it than required by law." This was all DMC was required to do to preserve error. TEX.R.

CIV. P. 274; *Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154, 157 (Tex.1994) ("As we held in *Moulton v. Alamo Ambulance Serv., Inc.*, 414 S.W.2d 444, 449–50 (Tex.1967), an objection is sufficient to preserve error in a defective instruction. A request of substantially correct language is not required. The applicable rule is Rule 274...."). The error was clearly harmful. Accordingly,the judgment of the court of appeals must be reversed and the case remanded to the district court for further proceedings.

 Because the case may be retried, we address another issue raised by DMC to provide guidance to the district court on remand. *See, e.g., Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 81 (Tex.1997) (citing *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex.1964) and *Parker v. Bailey*, 15 S.W.2d 1033, 1035 (Tex. Comm'n App.1929, holding approved)). DMC argues that any liability it had was for a premises defect rather than for some negligent activity and that the charge incorrectly omitted inquiry on an element of premises liability, that is, whether a condition of DMC's premises presented an unreasonable risk of harm to Liedeker. We agree. Liedeker claims that her injury was caused by the condition of DMC's elevator, not by any conduct of DMC at the time of her injury. Her claim is therefore based on premises liability. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997). For an invitee like Liedeker to establish the liability of a premises owner like DMC, she must prove that "(1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; (4) the owner's failure was a proximate cause of injury to the invitee." *State Dept. of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). The charge in this case inquired about the third and fourth elements, except that it asked about a failure to exercise a high degree of care rather than a failure to exercise ordinary care, to which DMC objected. DMC did not request a question regarding the second element of premises liability,

apparently conceding that it knew of the condition of the elevator, but it did request a question about the first element. The district court erred in denying DMC's request.

The court of appeals held that DMC failed to preserve its complaint because the record does not reflect that the district court denied DMC's requests. We disagree. The district court stated on the record that it would endorse DMC's requests:

[DMC's counsel]: Your Honor, the only other thing I have, I filed this morning some requested issues and instructions. I have provided copies to [opposing counsel]. And I would just request that the Court just refuse them—

The Court: I will sign off on them.

[DMC's counsel]:—and sign off on them.

The Court: Well, you don't want to request that the Court refuse them. You just want to request that the Court make its ruling, don't you?

[DMC's counsel]: That's right.

The Court: And note that they are refused.

[DMC's counsel]: You're right. Take that off the record.

The Court: I know what you meant.

[DMC's counsel]: Thank you, your Honor. If you would just sign them, I would appreciate it.

The Court: I will do that.

The court, however, did not sign them. The appeals court concluded that this exchange did not indicate that the district court was aware of DMC's request for a question about unreasonable risk of harm. But the appeals court ignored the district court's statements after DMC discovered that its requested issues and instructions had not been endorsed with the court's ruling. The court explained:

I don't think there's any question that the requested questions were submitted to the Court and ruled on by the Court. There is no question in my mind that they were ruled on. There is no question they were submitted. They are stamped in in [sic] the clerk's office. They were before the Court, and there was a lengthy discussion

on it, a discussion over two days as I recall.

\* \* \*

For [not endorsing the requests "refused"] I am truly sorry. I really am. You know, perhaps I was distracted....

■ Rule 276 of the Texas Rules of Civil Procedure requires a trial court to endorse refused requests " 'Refused,' and sign the same officially". The rule provides that such endorsement preserves error:

> Such refused or modified instruction, question, or definition, when so endorsed shall constitute a bill of exceptions, and it shall be conclusively presumed that the party asking the same presented it at the proper time, excepted to its refusal or modification, and that all the requirements of law have been observed, and such procedure shall entitle the party requesting the same to have the action of the trial judge thereon reviewed without preparing a formal bill of exceptions.

TEX.R. CIV. P. 276. But the rule nowhere suggests that the trial court's endorsement is a prerequisite to preservation of error, or that the trial court's failure to comply with the rule waives the requesting party's complaint. To the contrary, by stating that an endorsement constitutes a bill of exceptions, it suggests that other proof that requested instructions were refused would also preserve error.

This Court has never held that the trial court's endorsement is the only means of preserving error in refusing charge requests. Three cases hold that an endorsement is not necessary: *Oechsner v. Ameritrust Texas,* 840 S.W.2d 131, 133 (Tex.App.—El Paso 1992, writ denied); *Chemical Express Carriers, Inc. v. Pina,* 819 S.W.2d 585, 589 (Tex. App.—El Paso 1991, writ denied); *American Motorists Ins. Co. v. Lynn,* 762 S.W.2d 229, 232 (Tex.App.—El Paso 1988, writ denied). *See also Munoz v. Berne Group, Inc.,* 919 S.W.2d 470, 472 (Tex.App.—San Antonio 1996, no writ) (dicta). Only one case has ever held to the contrary: *McLendon v. McLendon,* 862 S.W.2d 662, 674 (Tex.App.— Dallas 1993, writ denied).

Most cases suggest that an endorsement is not the only way to preserve error in refusing charge requests: *Maddox v. Denka Chem. Corp.,* 930 S.W.2d 668, 670 n. 1 (Tex. App.—Houston [1st Dist.] 1996, no writ); *General Resources Org., Inc. v. Deadman,* 907 S.W.2d 22, 33 (Tex.App.—San Antonio 1995 ), *writ denied,* 932 S.W.2d 485 (Tex. 1996); *Anderson v. Vinson Exploration, Inc.,* 832 S.W.2d 657, 667–668 (Tex.App.—El Paso 1992, writ denied); *GAB Business Serv., Inc. v. Moore,* 829 S.W.2d 345, 349 (Tex.App.—Texarkana 1992, no writ); *Texas Health Enter., Inc. v. Krell,* 828 S.W.2d 192, 197 (Tex.App.—Corpus Christi 1992), *writ granted w.r.m.,* 830 S.W.2d 922 (Tex.1992); *Corley v. Exxon Pipeline Co.,* 821 S.W.2d 435, 437 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Greenstein, Logan & Co. v. Burgess Mktg., Inc.,* 744 S.W.2d 170, 181 (Tex.App.—Waco 1987, writ denied); *Moffett v. Goodyear Tire & Rubber Co.,* 652 S.W.2d 609, 612 (Tex.App.—Austin 1983, writ ref'd n.r.e.); *Newman v. Delhi Gas Pipeline Co.,* 517 S.W.2d 635, 636 (Tex.Civ.App.—Tyler 1974, no writ); *Waggoner & Zeller Oil Co. v. Deike,* 508 S.W.2d 163, 166 (Tex.Civ.App.— Austin 1974, writ ref'd n.r.e.); *Epperson v. Berry,* 466 S.W.2d 24, 29 (Tex.Civ.App.— Houston [1st Dist.] 1971, no writ); *American Pozzolan Corp. v. Desert Trucking Co.,* 450 S.W.2d 433, 435 (Tex.Civ.App.—San Antonio 1970, writ ref'd n.r.e.); *Melton v. State,* 395 S.W.2d 426, 430–431 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.); *Ramsey v. Polk County,* 256 S.W.2d 425, 427 (Tex.Civ.App.— Beaumont 1953, no writ); *Gowan v. Reimers,* 220 S.W.2d 331, 337 (Tex.Civ.App.—Fort Worth 1949, writ ref'd n.r.e.); *Barnett v. Barnett,* 206 S.W.2d 273, 274–75 (Tex.Civ. App.—Austin 1947, no writ).

Fewer cases suggest that endorsement is the only method of preserving error: *Southwest Airlines Co. v. Jaeger,* 867 S.W.2d 824, 832 (Tex.App.—El Paso 1993, writ denied); *Demler v. Demler,* 836 S.W.2d 696, 698 (Tex. App.—Dallas 1992, no writ); *Haddock v. Arnspiger,* 763 S.W.2d 13, 15 (Tex.App.— Dallas 1989), *aff'd on other grounds,* 793 S.W.2d 948 (Tex.1990); *City of Terrell v. McFarland,* 766 S.W.2d 809, 812 (Tex.App.— Dallas 1988, writ denied); *Breithaupt v. Na-*

varro County, 675 S.W.2d 335, 339 (Tex. App.—Waco 1984, writ ref'd n.r.e.); *Cambridge Mut. Fire Ins. Co. v. Newton*, 638 S.W.2d 75, 80 (Tex.App.—Dallas 1982, writ ref'd n.r.e.); *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 719 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Jones v. Smith*, 466 S.W.2d 47, 49 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.); *Cross v. Everybodys*, 357 S.W.2d 156, 159 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n.r.e.); *Bituminous Casualty Corp. v. Jordan*, 351 S.W.2d 559, 562 (Tex.Civ.App.—Waco 1961, no writ); *Cantrell v. Garrett*, 342 S.W.2d 466, 468 (Tex.Civ.App.—Houston 1961, no writ); *Qualia v. Southern Farm Bureau Ins. Co.*, 316 S.W.2d 767, 768 (Tex.Civ.App.—Amarillo 1958, no writ).

■ To make an endorsement by the trial court the exclusive means of preserving error for refusing a charge request, when the court's refusal is otherwise clear from the record, would promote form over substance and be ill advised. A lawyer has no practical way of ensuring that a trial court will actually endorse charge requests as promised—as the present case illustrates. Rule 276 allows for preservation of error by other means. Consistent with the rule, the clear weight of authority, and sound policy, we hold that an endorsement by the trial court is not the exclusive means of preserving error for refusing a charge request. We disapprove opinions of the courts of appeals which suggest a contrary rule. In this case the trial court admitted that he had considered the requested question, had refused it, and had meant to endorse it but simply failed to do so, for which he was sorry. The trial court's statements on the record clearly preserved DMC's complaint that the case should have been submitted to the jury on a premises liability theory rather than a negligent activity theory.

\* \* \* \* \*

For the reasons given, we grant DMC's application for writ of error and without hearing argument, reverse the judgment of the court of appeals and remand the case to the district court for further proceedings consistent with this opinion.

HANKINSON, J., did not participate in the decision.