David Hannoll Hardison v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-395-CR

     DAVID HANNOLL HARDISON,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the County Criminal Court No. 7
Tarrant County, Texas
Trial Court # 0578658
                                                                                                                

O P I N I O N
                                                                                                                

      Appellant Hardison appeals his conviction for driving while intoxicated, for which he was
sentenced to 120 days in the county jail and fined $500, probated for 12 months.
      Officer Martinez was on routine patrol at 11:30 p.m. on March 4, 1995. He observed the left
side tires of Appellant's car cross the center line of the roadway. He began to follow and
Appellant's car drove through a stop sign without braking and again crossed the center line of the
road. Officer Martinez turned on his overhead lights and stopped Appellant for the traffic
violations. Martinez approached the vehicle to interview the driver. He noticed Appellant's eyes
were watery, and that a strong odor of alcohol was coming from the vehicle. Appellant's speech
was slurred and he was asked to exit his car and walk to the rear of his vehicle. Appellant had
difficulty getting out of his car. Martinez then required Appellant to perform standard sobriety
tests consisting of the Horizontal Gaze Nystagmus (HGN), walk and turn, one leg stand, nose
touch, alphabet and reverse counting. In Martinez's opinion Appellant failed all the tests. 
Martinez arrested Appellant and transported him to the Azle police station. In the video room of
the police station, Appellant refused to perform any sobriety tests, sat down on the floor, and
repeatedly told Officer Martinez that he was not a "dancing chicken."
      Appellant was charged with misdemeanor DWI by Information, and he was tried before a
jury. The jury found him guilty and Appellant elected to have the judge assess punishment. The
judge sentenced Appellant to 120 days in the county jail and assessed a $500 fine, probated for 12
months.
      Appellant appeals on one point of error: "The trial judge erred by admitting the Gaze
Nystagmus Test."
      Specifically, Appellant argues that (1) the arresting officer was not certified by the State to
perform the HGN test; (2) that the officer failed to follow the procedures in the DWI detection
manual; and (3) that the officer failed to perform, prior to administering the test, the required
pretest screening for factors other than alcohol that potentially contribute to nystagmus, such as
other drugs, nerve disorders or brain damage.
      Officer Martinez testified that he is certified to perform the test from the State, from Fort
Worth and the [DWI] school. More specifically, he testified he was certified by the State in 1990;
and he attended another DWI class in 1993 or 1994, from which he obtained further certification. 
Officer Martinez's testimony that he was certified by the State is uncontradicted. The officer
described how he administered the HGN test. He inquired whether Appellant had any eye
problems before conducting the test. He tested Appellant without light in his eyes and he tested
each eye twice. He knew how to conduct the HGN properly, having tested some 100 subjects,
and he administered the field sobriety tests in the same manner every time he used them. 
      Emerson v. State, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994) sets the standard for the
admission of testimony concerning HGN test evidence:
For testimony concerning a defendant's performance on the HGN test to be admissible,
it must be shown that the witness testifying is qualified as an expert on the HGN test,
specifically concerning its administration and technique. In the case of a police officer,
this requirement will be satisfied by proof that the officer has received practitioner
certification by the State of Texas to administer the HGN. A witness qualified as an
expert on the administration and technique of the HGN test may testify concerning a
defendant's performance on the HGN test, but may not correlate the defendant's
performance to a precise blood alcohol content.

      In this case the trial court properly admitted the HGN test and Appellant's test results. 
Officer Martinez was certified by the State, and he followed the proper procedures he had learned
in order to obtain certification. He screened out other factors affecting the HGN test.
      Appellant point is overruled. The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Chief Justice Davis,
      Justice Cummings and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed September 2, 1998
Do not publish



s. Brooks’ premises-liability claim. By filing this motion, with summary-judgment
evidence attached, the Church assumed the burden to show that there is “no genuine issue as to
any material fact” concerning whether (1) the concrete curb-stop, in the dark, posed an
unreasonable risk of harm, and (2) the Church had knowledge of the dangerous condition. See
id. 166a(c) (The movant is entitled to judgment if the summary judgment motion and
accompanying evidence “show that, except as to the amount of damages, there is no genuine issue
as to any material fact and the moving party is entitled to judgment as a matter of law on the issues
expressly set out in the motion.”). Accordingly, we apply the standard of review for traditional
summary judgment motions despite the Church’s attempted characterization of its motion as a “no
evidence” one.
Standard of Review
      The “main policy consideration behind creating [a summary judgment] device was to allow
trial courts to dispose of patently meritless claims and defenses without resorting to a full trial on
the merits.” William J. Cornelius et al., Tricks, Traps, and Snares in Appealing a Summary
Judgment in Texas, 50 Baylor L. Rev. 813, 814 (1998). The standard of review for a traditional
summary judgment is well established: (i) the movant for summary judgment has the burden of
showing there is no genuine issue of material fact and is entitled to summary judgment as a matter
of law; (ii) in deciding whether there is a disputed material-fact issue preventing summary
judgment, we take evidence favorable to the non-movant as true; and (iii) every reasonable
inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Nixon
v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Larsen v. Carlene
Langford & Assocs., 41 S.W.3d 245, 248-49 (Tex. App.—Waco 2001, pet. denied). When
necessary to establish a fact issue, the non-movant must present summary-judgment evidence. 
Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 907 (Tex. 1982); Ethridge, 995
S.W.2d at 294. To prevail on summary judgment, the Church, as we have stated, must show
there is no genuine issue of material fact concerning one of the two essential elements of the
Brooks’s cause of action that it put in issue. Larsen, 41 S.W.3d at 249.



Application
      The elements of a premises-liability claim are: (1) the owner had actual or constructive
knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of
harm; (3) the owner did not exercise reasonable care to reduce or eliminate the risk of harm; and
(4) the owner’s failure to use such care proximately caused the plaintiff’s injuries. Dallas Market
Center Dev. v. Liedeker, 958 S.W.2d 382, 385 (Tex. 1997). We note that this is not a “slip-and-fall” case which typically involves the presence of a foreign substance on the owner’s property that
has been in existence for a sufficient length of time such that the owner should have known about
and removed the substance to prevent an accident from occurring. Rather, the facts in this case
are unique, in that Mrs. Brooks contends that her fall in the parking lot was caused by a condition
resulting from the lack of lighting near where she stumbled over the curb-stop.
Condition Posing an Unreasonable Risk of Harm
      The Church contends that the summary-judgment evidence shows that the curb-stop, as a
matter of law, does not pose an unreasonable risk of harm. “A condition presenting an
unreasonable risk of harm is one in which there is such a probability of a harmful event occurring
that a reasonably prudent person would have forseen it or some similar event as likely to happen.” 
Reliable Consumers, Inc. v. Jaquez, 25 S.W.3d 336, 341 (Tex. App.—Austin 2000, pet. denied)
(quoting Seideneck v. Cal Bayreuther & Assoc., 451 S.W.2d 752, 754 (Tex. 1970)).
      The Church contended in its motion that “[i]t is certainly reasonable to presume that non-functioning lights and car stops create some risk. However, Plaintiffs cannot provide any
evidence, and certainly no evidence to create a material fact question, that any condition on the
parking lot poses an unreasonable risk of harm.” (Emphasis in original). However, Billie Lee
Hassell, a former trustee of the Church, said that light fixtures on the building had not functioned
properly for some time. Hassell said “[t]hey work sometimes, and sometimes they don’t.” He
explained that the fixtures were operated by a remote system that turned on the lights at a chosen
time; according to Hassell, the remote system did not always turn on the lights as programmed. 
Mrs. Brooks testified in her deposition that the light fixture on the building closest to where she
fell was off. She simply stated: “It was dark. . . . there was no light.”
      Faced with a similar request, i.e., to hold as a matter of law that a particular condition of
property could never pose an unreasonable risk of harm, the Austin Court of Appeals stated:
It is important to note that reasonableness determinations such as the one here are fact-intensive inquiries and, as such, are issues well-suited for a jury’s determination. Indeed,
as the Texas Supreme Court commented in one of the cases cited by appellant, there is
no definitive, objective test that may be applied to determine whether a specific condition
presents an unreasonable risk of harm.

Reliable Consultants, Inc., 25 S.W.3d at 342 (citing Seideneck, 451 S.W.2d at 754); see also State
Bar of Texas, Texas Pattern Jury Charges—Malpractice, Premises, & Products PJC 66.3 (2000)
(The pattern charge for a premises-liability claim specifically asks the jury “if the condition posed
an unreasonable risk of harm.”).
      Furthermore, the Supreme Court has recently addressed whether darkness caused by non-functioning mast lighting on the Queen Isabella Causeway posed a “dangerous condition.” County
of Cameron v. Brown, 45 Tex. Sup. Ct. J. 680, 2001 WL 1869986, *4 (May 23, 2002). A
plurality of the Court held:
We cannot say, as a matter of law, that it is unforseeable that a significant and
unexpected change in lighting at night on a narrow and curving causeway could impair
a motorist’s ability to avoid obstacles that lie ahead. While [plaintiff’s] alleged lack of
care may be an issue of comparative responsibility for the jury to decide, . . . , it does
not render the subsequent harm in this case unforseeable.

Id. The Court stated that the “decision rests upon the causeway’s unique characteristics and the
nature of the particular dangerous condition alleged.” Id. at *5.
      Similarly, Mrs. Brooks is complaining of a particular condition that is unique, i.e., she claims
that the non-functioning lighting which was supposed to illuminate her path through the empty
parking space caused her to not see the curb-stop and fall. Accordingly, we cannot say that it is
unforeseeable that a “significant” change in lighting at night in a parking lot could impair Mrs.
Brooks’s ability to “avoid obstacles that lie ahead.” Id. at *4. The Church concedes that this
“condition” posed some risk. Whether a particular risk is unreasonable or not is a fact question
for the jury. Reliable Consultants, Inc., 25 S.W.3d at 342. We cannot say the summary-judgment
evidence conclusively shows that the complained of condition did not pose an unreasonable risk.
Actual or Constructive Knowledge
      Here, the condition of which Mrs. Brooks complains is the curb-stop in a dark part of the
Church’s parking lot. The Church obviously had knowledge of the curb-stop from the time it was
first placed on its property. The Brookses allege that the darkness of night, coupled with the fact
that the light on the building closest to the curb-stop was not on, caused her to fall. The summary-judgment evidence establishes that the Church had installed (1) at least two tall mast lighting
fixtures that illuminate the outer edge of the parking lot and (2) fixtures placed under the eave, or
overhang, of the Church building for the purpose of illuminating the areas close to the building,
i.e., parking spaces and entrances to the building.
      Mr. Hassell stated that when dusk arrives his “regular routine” was to turn on the mast
lighting in the parking lot. His routine does not include turning on the lights affixed to the Church
building because they are operated by a remote system in which the lights are programmed to turn
on at a certain time. He also said that the fixtures light up at their designated time “sometimes,
and sometimes” not. He admitted, however, that he did not know whether the fixture that Mrs.
Brooks alleges was off was in fact off: “[T]his Northeast one [referring to the light fixture at issue]
hadn’t worked in a long time.” Pastor Brown stated that he did not know why that light fixture
was not on. Brown said: “I don’t know if they were burned out or if they just were not flipped
on. I don’t know.” Finally, Hassell admitted that he once tripped and fell over a curb-stop in the
Church’s parking lot during the day.
      Indulging “every reasonable inference” in favor of Mrs. Brooks, the non-movant, we find
more than a scintilla of summary-judgment evidence concerning the Church’s actual or
constructive knowledge of the particular condition which allegedly caused her fall. Nixon, 690
S.W.2d at 548-49.
Conclusion
      Finding that the summary-judgment evidence raises genuine issues of fact, we reverse the trial
court’s judgment and remand the cause for further proceedings.
 

                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
      (Justice Gray dissenting)
Reversed and remanded
Opinion delivered and filed September 4, 2002
Publish
[CV06]