TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00713-CV







Ernesto C. Castaneda, Individually and d/b/a Castaneda's Nationwide


Federal Bonding Company, Appellant



v.



Lydia Vasquez d/b/a Vasquez Bail Bond, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 164,218-B, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING







 Ernesto C. Castaneda appeals from a money judgment recovered by Lydia Vasquez
in her suit for damages resulting from Castaneda's breach of two indemnity agreements. (1) We will
affirm the judgment.


THE CONTROVERSY


 At Castaneda's request, Vasquez posted bail bonds for two criminal defendants. 
By written agreements, Castaneda contracted to indemnify Vasquez, if the defendants did not
appear when required, "from any and all losses, court costs, . . . bond forfeitures, investigator
fees [,] apprehension fees and expenses of apprehension, . . . or liability of any type, character,
or description" resulting from their failure to appear. The two defendants failed to appear when
required. As a result, Vasquez suffered the following losses:


Bond forfeitures $43,750.00

Court costs 392.00

Apprehension costs 2,102.71

Other costs 800.00


 Total $47,044.71

 



 When Castaneda failed to indemnify her for such losses, Vasquez sued him for
breach of the contracts and fraud in their inducement. The jury failed to find the elements of
fraud but did find those for breach of contract. On the verdict, Vasquez recovered judgment
against Castaneda for breach of contract in the principal sum of $47,295.00, together with post-judgment interest on that sum, costs of court in the present litigation, and attorney's fees in the
amount of $15,000. Castaneda appeals on the assignments of error next to be discussed.


DISCUSSION AND HOLDINGS


The Evidence Does Not Support the Jury's Answers to the Damage Question.

In the Alternative, the Answers to Jury Questions No. Two and No. Three
Represent a Double Recovery of the Attorney's Fees Sought by Plaintiff.


 In Question Number Two, the charge required the jury to find the sum of money,
if any, that would fairly and reasonably compensate Vasquez for her damages, if any, resulting
from Castaneda's failure to comply with the indemnity agreements. (2) The charge instructed the
jury that they might consider only such "reasonable and necessary costs incurred by" Vasquez
which "Castaneda was required to pay as a result of the" indemnity agreements. The jury found
$47,295.00 in answer to Question Number Two and in answer to Question Number Three, they
found $15,000 in attorney's fees.

 In his closing argument to the jury, Vasquez's attorney made the following
remarks:


There are--in terms of damages, there's a damage question here, if you will recall,
Rudolfo Martinez, Ms. Vasquez paid $18,750 and $196 in court costs. Miguel
Lopez she paid $25,000, $196 in court costs. $1,102.71 and $1,000 both in bounty
hunter fees and another $800 for a total of $47,044.71. And she's incurred
attorney's fees and expenses in the case in the amount of approximately $15,100 

for a grand total of $62,144.71.



(Emphasis added.) (3)

 Notwithstanding the tenor of Castaneda's first assignment of error, quoted above,
he does not argue that the $47,295.00 found by the jury is not a reasonable inference from the
evidence pertaining to Vasquez's losses. Instead, he points to the argument of Vasquez's counsel,
quoted above, and argues as follows:


Such argument improperly permitted the jury to award attorney's fees in response
to both Questions Two and Three. [Castaneda's] counsel argued at closing that the
$15,000.00 paid as bond fees to [Vasquez] should be deducted from the costs
incurred by [Vasquez]. . . . Such sum is the same as the amount of the attorney's
fees actually found in answer to Jury Question Three, . . . so there is no way to
look at the jury's answers and determine if the jury was misled by the argument
of [Vasquez's] counsel.


As these answers may represent a double recovery of [Vasquez's] attorney fees,
the award of damages accordingly should be set aside.



 If we understand correctly the argument, it postulates that the jury accepted
Castaneda's argument that the jury should deduct $15,000.00 from the total losses claimed by
Vasquez, that being the payment she received from the criminal defendants for writing their bail
bonds; and having done so, the jury improperly reinserted the $15,000 in the form of Vasquez's
attorney's fees and expenses because her counsel included the $15,000 in attorney's fees in
arguing to the jury that Vasquez's total damages were $62,144.71. And when a recovery of
$15,000.00 in attorney's fees was also awarded on the jury's answer to Question Number Three,
the result was a double recovery of attorney's fees. We reject the argument.

 We find nothing in the record to support Castaneda's theory that the jury accepted
his argument regarding the $15,000.00 in bail-bond fees received by Vasquez, a theory that is
contrary to the terms of the written indemnity agreements which do not provide for an offset of
that character against Castaneda's indemnity undertaking. Castaneda's argument in this particular
is simply an argument from silence. And we do not see how the anomaly claimed by Castaneda
can be attributed to the remarks made by Vasquez's counsel, which rather clearly distinguished
the $15,100.00 in attorney's fees and expenses from the losses for which Castaneda was liable on
his indemnity undertaking. And we believe, finally, that any impropriety in such remarks was
easily curable by an objection or a motion to instruct the jury, followed by a proper instruction
or a withdrawal of counsel's remarks if they were improper. Castaneda made no such objection
or motion. We believe the error of which he now complains was therefore waived. See Otis
Elevator Co. v. Wood, 436 S.W.2d 324, 333 (Tex. 1968).

 We hold there was no error; if there was error, however, we hold it was waived
for the reason given.


The District Court Erroneously Denied Defendant's Requested Jury Question
No. One Relating to Excuse.


 Castaneda pleaded that Vasquez "breached the agreement and [Castaneda] is
thereby relieved of liability under" the written indemnity agreements. In this connection,
Castaneda refers to a jury question that he contends he presented to the trial judge, which the
judge refused. In his brief, Castaneda formulates the question as follows:


Was Defendant Ernesto C. Castaneda's failure to comply excused?


Failure to comply by Ernesto C. Castaneda is excused by Plaintiff Lydia Vasquez's
previous failure to comply with a material obligation of the same agreement.


Answer yes or no.



We cannot find in the record that Castaneda presented to the trial judge a question in this form--the
form he now complains the trial judge failed to submit.

 The record does contain a copy, bearing the clerk's file mark, of Castaneda's
"Requested Jury Charge." It includes a Question No. One inquiring whether Castaneda failed to
comply with his agreements with Vasquez, and a Question No. Two conditioned upon a "yes"
answer to Question No. One. Question No. Two contains the question and instruction quoted
above, followed by this additional instruction:


Failure to comply by Ernesto C. Castaneda is excused if all the following
circumstances occurred:


1. Plaintiff Lydia Vasquez


 a. by words or conduct made a false representation or concealed material
facts,


 b. with knowledge of the facts or with knowledge or information that would
lead a reasonable person to discover the facts, and 


 c. with the intention that defendant Ernesto C. Castaneda would rely on the
false representation or concealment in acting or deciding not to act; and 


2. Defendant Ernesto C. Castaneda


 a. did not know and had no means of knowing the real facts; and


 b. relied to his detriment on the false representation or concealment of
material facts.


Answer yes or no.



 The copy contained in the clerk's record does not indicate that the trial judge
endorsed on the filed copy the word "Refused" or that the judge signed the same officially. See
Tex. R. Civ. P. 276.

 A transcription of the charge conference indicates, however, that the trial judge
rejected a requested charge along the lines of Question No. Two as recorded in the copy filed with
the clerk. For purposes of discussion, we will assume the trial judge declined to submit a question
in this form--the only form we find in the appellate record. See Dallas Market Ctr. Dev. Co. v.
Liedeker, 958 S.W.2d 382, 385-86 (Tex. 1997).

 The evidentiary record indicates that Question No. Two was intended to submit to
the jury the issue of whether Castaneda's admitted failure to perform under the indemnity
agreements was "excused" because of Vasquez's antecedent breach of those agreements. The
antecedent breach attributed to Vasquez was that she agreed she would notify Castaneda in
advance before reaching an agreement with the State to pay the bail bonds, and permit Castaneda 
"to dispute any forfeiture before [Castaneda] was obligated to make payment under" the indemnity
agreements; and, that Vasquez failed to give Castaneda such notice and opportunity to dispute
liability on the bail bonds. This agreement, according to Castaneda, was an oral agreement
outside the written indemnity agreements.

 As evidentiary support justifying submission of Question No. Two, Castaneda
points to the following part of his testimony:


Q. Okay. And--now, in other words, did you and Ms. O'Neill [Vasquez's agent]
have any other agreements that were beyond the scope of that written
document?


* * *



A. Yeah, I verbally agreement [sic] with Nora [Ms. O'Neill] that I would
exonerate the bond to the extent of the appeal, being that they did not exhaust
the remedy of the bond forfeiture, that it was forfeited, I could have gone into
the case and exonerated the bond completely.


Q. Excuse me, can you tell the jury what does it mean to exonerate a bond?


A. Exonerate a bond it means that I'm liable for this bond for $25,000 and that
this bond I can dispute it in court, the district judge, pursue it through the
legal technicalities in the law book of the court of criminal procedures [sic]
which criss cross reference with 2372 [sic] because the lady works--and the
same law, actually the same law. I can exonerate the bond because this man
here [one criminal defendant] was deported to Mexico. And it is--there is
a--and the court of--to the 22.16 that I can exonerate it and get out of the bond
completely. You don't have to pay the county because the man skipped bond
to Mexico on this bond.


Q. Mr. Castaneda, what was your understanding with Ms. O'Neill as to your
right to be able to exonerate on the bond?


A. I told her that I would do that in case that the man would be a fugitive. She
said she agreed with me.


* * *




 It was the trial judge's duty to submit in her charge "such instructions and
definitions as shall be proper to enable the jury to render a verdict," Tex. R. Civ. P. 277, and
"which are raised by the written pleadings and the evidence." Tex. R. Civ. P. 278. Castaneda
cannot obtain a reversal of the judgment below unless, with respect to the affirmative defense in
question, the evidence raised the matter and he requested submission of the defense "in
substantially correct wording," that is to say, "a substantially correct definition or instruction." 
Id. The expression "substantially correct" does not mean absolutely correct, nor does it mean
merely sufficient to call the matter to the attention of the court. It means an instruction or
definition that is in substance and in the main correct, and that is not affirmatively incorrect. See
Placencio v. Allied Ind. Int'l, Inc., 724 S.W.2d 20, 21 (Tex. 1987). We believe Question No.
Two, in the version found in the clerk's record, is affirmatively incorrect, or at minimum is not
in the main correct, even if justified by the evidence.

 Castaneda's theory is that Vasquez's antecedent breach of the indemnity
agreements, which contained the alleged oral agreement, "excused" his performance of the
indemnity agreements. This theory requires an element not suggested by the evidence or the form
of Question No. Two. If the collateral oral agreement attributed to Vasquez--her agreement to
notify Castaneda in advance before paying the bail bonds and to give him an opportunity to
dispute liability thereon--was an independent covenant, Castaneda may only recover for Vasquez's
alleged breach in a separate cause of action. In that case, Vasquez's asserted breach is not a
defense. If the alleged covenant was dependent, on the other hand, Castaneda possessed an
election to terminate the entire contract. (4) See, e.g., Investors Util. Corp. v. Challacombe, 39
S.W.2d 175, 178 (Tex. Civ. App.--Waco 1930, no writ).

 It is said that whether a covenant is dependent or independent depends on the
parties' intention at the time the contract is made. See, e.g., John R. Ray & Sons, Inc. v.
Stroman, 923 S.W.2d 80, 86 (Tex. App.--Houston [14th Dist.] 1996, writ denied). Testimony 
introduced by Vasquez disputed the existence of the alleged oral agreement. Nothing in Question
No. Two or elsewhere in the charge required the jury to determine the parties' intention, on this
disputed issue of material fact, at the time they allegedly made it. See Lone Star Steel Co. v.
Scott, 759 S.W.2d 144, 156-57 (Tex. App.--Texarkana 1988, writ denied) (whether parties have
made agreement is issue of fact unless shown by undisputed documentary or other evidence that
they intended to enter into binding agreement; whether such agreement meets legal requirements
of a contract and its interpretation are questions of law). We cannot say fairness in the
circumstances dictates a finding either way, as a matter of law, on whether the claimed oral
agreement was intended to be dependent or independent, assuming it was in fact made by the
parties and amounted to a binding agreement. See Lazy M. Ranch, Ltd. v. TXT Operations, LP,
978 S.W.2d 678, 681 (Tex. App.--Austin 1998, pet. denied).

 Because nothing in the evidence nor in the formulation of Question No. Two
supported or incorporated the foregoing matters, we hold the trial judge did not abuse his
discretion in declining to submit such question in the form requested by Castaneda.


The trial court erred in allowing plaintiff to present evidence of Defendants'
criminal history in violation of Rules 404 and 609, Texas Rules of Civil
Evidence.


 Outside the jury's presence, Castaneda testified that he had been twice convicted
for furnishing false information to federal government officials, a federal offense. The trial judge
ruled the testimony admissible, even though the sentences were served and Castaneda released
approximately twelve and eighteen years, respectively, before the trial in August 1998. Vasquez
called Castaneda as an adverse-party witness and before the jury elicited from him that he had
been convicted of "two felony convictions" in 1980 and 1986. Castaneda complains that
admission of the testimony in evidence violated Rules 404 and 609 of the Texas Rules of
Evidence.

 "The credibility of a witness may be attacked by any party, including the party
calling the witness." Tex. R. Evid. 607. Rule 609 provides as follows:


(a) General rule. For the purpose of attacking the credibility of a witness,
evidence that the witness has been convicted of a crime shall be admitted if
elicited from the witness . . . but only if the crime was a felony . . . and the
court determines that the probative value of admitting this evidence outweighs
its prejudicial effect to a party.


(b) Time Limit. Evidence of a conviction under this rule is not admissible if a
period of more than ten years has elapsed since the date of the conviction or
of the release of the witness from the confinement imposed for that conviction,
whichever is the later date, unless the court determines, in the interests of
justice, that the probative value of the conviction supported by specific facts
and circumstances substantially outweighs its prejudicial effect.



Tex. R. Evid. 609. Rule 404 provides as follows:



(a) Character Evidence Generally. Evidence of a person's character or character
trait is not admissible for the purpose of proving action in conformity
therewith on a particular occasion, except:



* * *



 (3) Character of Witness. Evidence of the character of a witness, as
provided in Rules 607, 608 and 609.



* * *




Tex. R. Evid. 404.


 When the evidence was admitted over Castaneda's objection, Vasquez had before
the court her cause of action against Castaneda for fraud. Therein she alleged that Castaneda had
made eight distinct misrepresentations to her agent to induce Vasquez to write the two bail bonds,
knowing the representations were false and intending never to perform the indemnity agreements. 
Vasquez alleged further that she relied on the representations in making the bail bonds, which she
would not have done had she known the falsity of the representations. In his testimony, Castaneda
denied making the eight representations but related facts that would render them false had they
been made. The issue thus reduced to whether the eight alleged misrepresentations had been
made; the question of their falsity was undisputed.

 The jury, however, failed to find the elements necessary to establish Vasquez's
cause of action for fraud. Thus, admission of the two felony convictions in evidence could be
prejudicial to Castaneda only with respect to the disputed fact issue of whether the claimed oral
agreement, outside the written indemnity agreements, was in fact made--an oral agreement that
Vasquez would notify Castaneda in advance before paying the State on the bail bonds and give
him an opportunity to dispute liability thereon. We will consider the admissibility question in this
breach-of-contract context.

 Vasquez's agent testified explicitly that no such oral agreement was made while
Castaneda testified as quoted above. We will assume his testimony is reasonably susceptible of
a meaning that the oral agreement was made with Vasquez through her agent, although that
appears to us not to be the sense of his testimony. Under our assumption, the issue of credibility
was raised squarely; only one witness or the other could be telling the truth about whether the oral
agreement was in fact made. In this circumstance, admitting in evidence Castaneda's two
previous felony convictions was doubtless prejudicial to him. Therefore, such evidence was not
admissible under the unambiguous language of Rule 609(b) unless, in the interests of justice, the
trial judge could reasonably conclude under the specific facts and circumstances of the case that
the prejudice was substantially outweighed by the probative value of the testimony. Tex. R. Evid.
609(b).

 Among the specific facts and circumstances were the following: (1) whether the
oral agreement was in fact made was a question determinable solely on the basis of witness
credibility, there being no documentary or other evidence pertaining to the alleged agreement; (2)
the factor of truthfulness in a serious matter was common to Castaneda's transactions with the
federal officials and his alleged oral agreement with Vasquez's agent; (3) the later of the two
convictions, while remote as a matter of law under the ten-year limit of Rule 609(b), was
nevertheless remote by only some two years, having occurred approximately twelve years before
the time of trial; (4) the fact that there were two such convictions involving the common element
of truthfulness and separated by about six years, suggested the absence of rehabilitation or
reformation on Castaneda's part; and (5) in the context of the case, Castaneda was not exposed
to criminal liability; rather, his credibility was to be tested in connection with an affirmative
defense raised by him in order to avoid liability on written contracts that did not contain the oral 
condition he sought to establish by his testimony alone. In these specific facts and circumstances,
we believe the trial judge could reasonably conclude, in the interests of justice, that the probative
value of the disputed evidence substantially outweighed its prejudicial effect. We hold
accordingly. Tex. R. Evid. 609(b). (5)

 Finding no error as claimed by Castaneda, we affirm the judgment below.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices Yeakel and Powers*

Affirmed

Filed: February 17, 2000

Do Not Publish


















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Castaneda and Vasquez made the two contracts in their trade names, "Castaneda's
Nationwide Federal Bonding Company" and "Amigo Vasquez Bail Bonds," respectively.
2. Question Number Two was conditioned on an affirmative finding to Question Number
One, which asked whether Castaneda failed to comply with the indemnity agreements. The jury
answered affirmatively that question.
3. Vasquez negotiated an agreement with the State to pay substantially less than the face
amount of the bail bonds. The face amount of one bond was $125,000, the other $25,000. 
Castaneda does not complain regarding the $250.29 difference between the verdict amount
($47,044.71) and the principal amount of the judgment ($47,295.00).
4. Nothing in the record suggests that Castaneda made the necessary election. We will,
for purposes of discussion, assume that he did and was thus "excused" from performance under
the written indemnity agreements.
5. We have liberally considered Castaneda's assignment of error for his benefit by applying
the terms of rule 609(b) only in the context of the alleged oral agreement with Vasquez. In the
context in which the disputed evidence was admitted by the trial judge--before Vasquez's cause of
action for fraud had been rejected by the jury's failing to find the elements of that cause of
action--it is even plainer that the trial judge did not abuse his discretion. In that context, we should
add that deception was a common element in the federal offenses and in the fraud cause of action,
indicating perhaps a practice on his part of deceiving through misrepresentation in serious matters.



.

 Among the specific facts and circumstances were the following: (1) whether the
oral agreement was in fact made was a question determinable solely on the basis of witness
credibility, there being no documentary or other evidence pertaining to the alleged agreement; (2)
the factor of truthfulness in a serious matter was common to Castaneda's transactions with the
federal officials and his alleged oral agreement with Vasquez's agent; (3) the later of the two
convictions, while remote as a matter of law under the ten-year limit of Rule 609(b), was
nevertheless remote by only some two years, having occurred approximately twelve years before
the time of trial; (4) the fact that there were two such convictions involving the common element
of truthfulness and separated by about six years, suggested the absence of rehabilitation or
reformation on Castaneda's part; and (5) in the context of the case, Castaneda was not exposed
to criminal liability; rather, his credibility was to be tested in connection with an affirmative
defense raised by him in order to avoid liability on written contracts that did not contain the oral 
condition he sought to establish by his testimony alone. In these specific facts and circumstances,
we believe the trial judge could reasonably conclude, in the interests of justice, that the probative
value of the disputed evidence substantially outweighed its prejudicial effect. We hold
accordingly. Tex. R. Evid. 609(b). (5)

 Finding no error as claimed by Castaneda, we affirm the judgment below.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices Yeakel and Powers*

Affirmed

Filed: February 17, 2000

Do Not Publish


















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Castaneda and Vasquez made the two contracts in their trade names, "Castaneda's
Nationwide Federal Bonding Company" and "Amigo Vasquez Bail Bonds," respectively.
2. Question Number Two was conditioned on an affirmative finding to Question Number
One, which asked whether Castaneda failed to comply with the indemnity agreements. The jury
answered affirmatively that question.
3. Vasquez negotiated an agreement with the State to pay substantially less than the face